The court below rendered the following judgment, in part: "That the exceptions of the defendants as to amount of rents and an amount for personal property charged to the defendant, Hocutt, while he was acting as guardian, and as such guardian was cultivating the lands in dispute, should be sustained. The court further finds as a matter of law, that the defendant, B. A. Hocutt, should account for rents of the lands from 11 April, 1924, up to the present, and that he is entitled as a matter of law to the counterclaim of all improvements placed upon said lands since that date, as well as taxes expended on said lands, together with the amount of money which he paid for said land on said 11 April, 1924, to wit, $1,408.35, with interest from that date until paid. The court finds that the evidence warrants the findings of facts of the referee in that the lands from 1924, unto the present was worth for each crop year the sum of $340, and the said amount with the interest due on the same *Page 340 
will total as of this day the sum of $1,482.40. The court further finds that there is evidence to sustain the findings of the referee that the defendant, B. A. Hocutt, is entitled to a counterclaim the total amount as found by said referee in his itemized statement as filed in his report in this matter, to wit, the sum of $3,701.81, with interest from 11 October, 1927. It is therefore considered, ordered and adjudged, that the defendant, B. A. Hocutt, recover of the plaintiff, J. T. Jeffreys, the sum of $2,219.41, together with interest on the same from 11 October, 1927, and $75 of the referee's fee, but the cost of this action to be taxed by the clerk of this court, and including therein a fee of $150 for J. Ira Lee, referee in this matter against the defendants. That the foregoing judgment is declared a special lien upon the interest of the said J. T. Jeffreys, to wit: His life estate in the lands described in the pleadings in this cause."
The other necessary facts and assignments of error will be considered in the opinion.
(1) Plaintiff, J. T. Jeffreys, owned a life estate in about 186 acres of land in Wilder's Township, Johnston County, N.C. The remainder was owned by his minor children. (2) Early in the year 1920, prior to April, J. T. Jeffreys (fled the State) abandoned his wife, Octavia Jeffreys, who was an invalid, and minor children, leaving them without any means of sustenance or support. The defendant, B. A. Hocutt, is the brother of Octavia Jeffreys, the wife of plaintiff, J. T. Jeffreys, who, after the abandonment of his sister and her children, took them in his home and provided for and supported them and educated the two girls and expended some $12,000 more than the rents and profits of the farm. That B. A. Hocutt was appointed guardian on 20 September, 1920, for the minor children, and took charge of the land and used the rent and more in support and maintenance of the abandoned wife and children, and continued in possession of said land as such guardian until 11 April, 1924. (3) Bryant Rayborn, in the Superior Court of Johnston County, recovered a judgment against J. T. Jeffreys and J. D. Jeffreys, totaling in all $1,408.35. An execution was issued and the land sold by the sheriff and J. D. Jeffreys became the last and highest bidder. At the time plaintiff was a nonresident of the State. That on 11 April, 1924, J. D. Jeffreys and wife, Nancy Jeffreys, conveyed the life estate which he purchased at execution sale to B. A. Hocutt for $1,408.35. (4) The plaintiff, J. T. Jeffreys, returned to the State and brought this action 3 November, 1925, claiming the sale was *Page 341 
void from the sheriff to J. D. Jeffreys and from J. D. Jeffreys and wife to B. A. Hocutt, and praying that he recover the possession of the land and $5,000 from B. A. Hocutt for rents for the years 1920 to 1925, inclusive.
The case was appealed to this Court. Jeffreys v. Hocutt,193 N.C. p. 332. The facts were: "The execution issued on 14 December, 1921, was returnable to the February Term, 1922. This term began Monday, 20 February, and ended on Saturday, 4 March. The sale was made on the first day of the next term, which was 13 March, the plaintiff laying no claim to a homestead exemption." This Court held that the sale of land made after the execution expired was void.
After the above decision was rendered, the court below made an order which in part is as follows: "It is therefore considered, ordered and adjudged that J. D. Jeffreys be, and he is hereby subrogated to all rights of the plaintiff, Bryant Rayborn, in a certain judgment, which is duly docketed in the clerk's office of the Superior Court of Johnston County, in Judgment Docket _______, page ______, as aforesaid; and it appearing to the court that J. T. Jeffreys has paid no part of said judgment, but he claims before this court that J. D. Jeffreys is entitled to account for rents off of the lands for a certain number of years." The plaintiff excepted to this order.
The matter was referred to J. Ira Lee, referee, who filed his report and defendants made certain exceptions which were heard by the court below, and the finding of fact and conclusions of law are set forth in the judgment above set forth.
It is not disputed that the plaintiff, J. T. Jeffreys, owed the Bryant Rayborn judgment, treated on the record, amount due $1,408.35, as of 11 April, 1924. This judgment was a lien on plaintiff's land, life estate. This judgment was against plaintiff J. T. Jeffreys and defendant J. D. Jeffreys. J. D. Jeffreys purchased the land under execution for $1,408.35, and in turn sold it to B. A. Hocutt for the same amount. At the instance of plaintiff both deeds were declared void.
Plaintiff still owes this debt. All are parties to the action and all the facts of the entire matter are set forth in the pleadings and proper relief prayed for. J. D. Jeffreys prays for judgment against plaintiff for $1,408.35 and admits he gave a warranty deed to Hocutt, and if the deed to him at the execution sale was void he would owe Hocutt $1,408.35 and interest. B. A. Hocutt alleges that he purchased the land without knowledge of any defect in the title, sets up J. D. Jeffreys' warranty, and if the deed be declared void that J. D. Jeffreys would owe him $1,408.35.
The principle is set forth in Perry v. Adams, 98 N.C. at p. 172, as follows: "The plaintiff, however, undertook to purchase the land, so far *Page 342 
as appears, in good faith, and to the extent that the money he paid to the administrator was applied to the payment of debts of the intestate and the costs of administration that the personalty was insufficient to pay, to the extent he relieved the land in question, and is entitled to be subrogated to the rights of the creditors, whose debts and costs were so paid, and to have the sum of money due him charged upon the land. It would seem unconscionable to allow the feme defendant in that case to have the land discharged of the debt due the plaintiff for money thus paid by him and applied to relieve the same," citing numerous cases. Brown v. Harding, 171 N.C. at p. 691; Mfg. Co. v. Blalock, 192 N.C. at p. 413.
In Pub. Co. v. Barber, 165 N.C. at p. 487-8, speaking of subrogation, it is said: "The doctrine is one of equity and benevolence, and, like contribution and other similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential and perfect justice between all the parties without regard to form, and its object is the prevention of injustice."
As to subrogation the clear right to the ownership of the judgment is in J. D. Jeffreys. The deeds, at the instance of plaintiff, have been declared void. Under the pleadings and facts and circumstances of this case, there is an equitable assignment of the judgment to B. A. Hocutt.
The referee found that B. A. Hocutt was entitled to the $1,408.35 and interest from 11 April, 1924, clearing land (destumping) $80 and interest, to pack barn $800 and interest, to tobacco barn $150 and interest, taxes from 11 April, 1924, to 11 October, 1927, $696 and interest, the whole amounting to $3,701.81. All the improvements were put on the land and taxes paid subsequent to the purchase by B. A. Hocutt 11 April, 1924, the $80 clearing (destumping) land was done prior. Plaintiff did not appeal from these findings of the referee. The exception was only to the $1,408.35 and interest which, for the reasons given, cannot be sustained. B. A. Hocutt was charged by the referee with rent from April, 1920, to 11 October, 1927, eight years at $340 a year, total $2,720 and interest, and personal property of plaintiff left on hand when he abandoned it and used by Hocutt, April, 1920, $90 and interest, total $3,423.10. The referee found that plaintiff owed B. A. Hocutt the difference of $278.71. The court below overruled the finding of the referee as to the entire eight years rent, $2,720 and interest, and the $90 personal property and interest, to be charged against B. A. Hocutt, and found that B. A. Hocutt should account for the rent from 11 April, 1924, up to the present, four years at $340 a year and interest, amount to the total of $1,482.40, which deducted from the $3,701.81, left $2,219.41, for which judgment was rendered B. A. Hocutt with *Page 343 
interest from 11 October, 1927. The plaintiff excepted to the $90 personal property left on the place and which was used on the plantation by B. A. Hocutt, and also the counterclaim for the rents from April, 1920, to 11 April, 1924, four years rent at $340 a year and interest.
We think plaintiff's assignments of error cannot be sustained. J. T. Jeffreys, the plaintiff, fled the State and abandoned his wife and minor children. For the four years plaintiff was absent and not heard from, and no demand made by him for the premises, B. A. Hocutt, as guardian and agent, took the rents of the land and profits and expended it and more than $12,000 of his own money in the support and maintenance of the invalid, deserted wife and children, and even gave the two minor girls a college education at the expense of more than $6,000. The plaintiff owed a legal and moral obligation to support and maintain his wife and children.
In Miller v. Marriner, 187 N.C. at p. 457, it is held: "It seems to be settled that ordinarily a life tenant must pay the taxes and the interest on a mortgage indebtedness to the extent, at least, of the income which he receives from the property, but he is not bound to pay the principal of the mortgage."
In 27 R. C. L., under Waste, p. 1016, it is said: "There is, however, authority to the effect that allowing a farm to grow to weeds and lie untilled is waste."
C. S., 4447, is as follows: "If any husband shall wilfully abandon his wife without providing adequate support for such wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor."
This was construed in S. v. Bell, 184 N.C. p. 701, rendered 8 November, 1922, and it was there held: That wilful abandonment of the father of his children of the marriage is made a separate offense of like degree with that of his wilful abandonment of his wife.
Public Laws 1925, chapter 290, added a proviso to C. S., 4447, as follows: "Provided, that the abandonment of children by the father shall constitute a continuing offense and shall not be barred by any statute of limitations until the youngest living child shall arrive at the age of eighteen years."
C. S., 1667, in part is as follows: "If any husband shall separate himself from his wife and fail to provide her and the children of the marriage with the necessary subsistence according to his means and condition in life, or if he shall be a drunkard or spendthrift, or be guilty of any misconduct or acts that would be or constitute cause for divorce, either absolute or from bed and board, the wife may institute an action in the Superior Court of the county in which the cause of action arose *Page 344 
to have a reasonable subsistence and counsel fees allotted and paid or secured to her from the estate or earnings of her husband. Pending the trial and final determination of the issues involved in such action, and also after they are determined, if finally determined, in favor of the wife, such wife may make application to the resident judge of the Superior Court, or the judge holding the Superior Courts of the district in which the action is brought, for an allowance for such subsistence and counsel fees, and it shall be lawful for such judge to cause the husband to secure so much of his estate or to pay so much of his earnings, or both, as may be proper, according to his condition and circumstances, for the benefit of his said wife and the children of the marriage, having regard also to the separate estate of the wife." Vincent v. Vincent, 193 N.C. p. 492.
In Thayer v. Thayer, 189 N.C. p. 507 (39 A.L.R., p. 428), it is said: "Nearly one hundred years ago, Taylor, C. J., in Kimbrough v. Davis,16 N.C. p. 75, said: `The natural obligation of a parent to maintain his illegitimate offspring, cannot be doubted (Puffend 6, 4, ch. 11, sec. 6).' . . . `Past seduction (says Chancellor Kent) has been held a valid consideration to support a covenant for pecuniary reparation; and the innocent offspring of a criminal indulgence has a claim to protection and support, which courts of equity cannot and do not disregard.' Brown v.Kinsey, 81 N.C. p. 245, and cases cited. The Kimbrough case was cited and approved in Sanders v. Sanders, 167 N.C. p. 318: `There can be no controversy that the father is under a legal as well as a moral duty to support his infant children (Walker v. Crowder, 37 N.C. 487), and, if he has the ability to do so, whether they have property or not. Hagler v.McCombs, 66 N.C. 345. There is a natural obligation to support even illegitimate children which the law not only recognizes, but enforces.Burton v. Belvin, 142 N.C. 153; Kimbrough v. Davis, supra.'"
The agreed statement of facts upon which the title to the land was solely considered in the prior decision passed upon by this Court, says: "That the other issues between the parties raised by the pleadings are collateral to the question of title, and are reserved for further orders of the court."
We think the matters can all be settled in one action. C. S., 456; C. S., 507; C. S., 535; also C. S., 519; C. S., 521; C. S., 522; Cotton Millsv. Maslin, ante, p. 12; Cotten v. Laurel Park Estates, post, ____141 S.E. 339; Thompson v. Buchanan, ante, 155.
Under all the facts and circumstances of this case, it would be unconscionable and contrary to all principles of justice and equity to deny B. A. Hocutt his counterclaim against the plaintiff's claim for rents and profits of the land during the plaintiff's absence, when the proceeds *Page 345 
were admittedly used to fulfil an obligation solely resting on plaintiff to support his wife and children whom he had deserted.
The court below has allowed the defendant's counterclaim or set-off to plaintiff's claim for rent and the $90 and interest, and this is supported by evidence. The judgment, under settled principles of law and equity, must be
Affirmed.