GEORGANNE SMITH v. WILLIAM GEORGE PRICE

No. 8421DC764

(Filed 7 May 1985)

1. **Rules of Civil Procedure § 50.3— motion for directed verdict—statement of specific grounds**

    While the better practice is to state specific grounds for a directed verdict motion, a statement of specific grounds is not necessary where the issue is identified and the grounds for the motion are apparent to the court and the parties.

2. **Rules of Civil Procedure § 50— motion for directed verdict or judgment n.o.v. —credibility of movant's evidence**

    Ordinarily, the question of credibility is one for the jury and, where the movant's case depends to any extent on witness credibility, a directed verdict or judgment n.o.v. is rarely proper. However, there is no constitutional or procedural impediment to granting a directed verdict in favor of the party with the burden of proof when the credibility of the movant's witnesses is "manifest as a matter of law."

3. **Bastards § 10; Rules of Civil Procedure § 50.4— judgment n.o.v. for plaintiff on issue of paternity**

    In a civil paternity action, defendant raised only latent doubts as to the credibility of plaintiff mother's evidence, and the trial court properly entered judgment n.o.v. for plaintiff on the issue of paternity, where defendant corroborated most of plaintiff's testimony and refuted none of it in that defendant admitted at trial that he had sexual relations with plaintiff three times during one weekend and another time a week later without using contraception, and that a full-term baby was born to plaintiff some nine months later; based on defendant's admissions concerning sexual contact with plaintiff, blood grouping tests showed that the statistical possibility is less than one-half of one percent that defendant is not the father of the child; and even if plaintiff's testimony is discounted entirely and none of defendant's admissions of sexual contact considered, the blood test would show a 96.42% probability that defendant is the father of the child.

4. **Bastards § 10— paternity action—dismissal of counterclaim based on fraud**

    The trial court in a paternity action properly dismissed defendant's counterclaim seeking damages in the amount of child support he would pay during the child's minority on the ground that he was fraudulently tricked into having sex with plaintiff since defendant in effect sought to avoid his legal obligation to support the child he fathered and to impede enforcement of the child's legal and constitutional rights to support.

5. **Attorneys at Law § 7.5; Divorce and Alimony § 27— attorney fees—civil paternity action—child custody and support actions**

    The trial court was authorized to award reasonable attorney fees for child custody and support actions but not for a civil action to establish paternity

under G.S. 49-14. Furthermore, the court's order awarding attorney fees was insufficient in that it contains no finding that plaintiff was acting in good faith as required by G.S. 50-13.6.

APPEAL by defendant from *Tanis, Judge*. Judgments entered 13 December 1983 and 30 December 1983 in District Court, FORSYTH County. Heard in the Court of Appeals 13 March 1985.

In this civil action, plaintiff seeks a judicial determination that defendant is the father of her child, an order awarding custody of the child to her, and reasonable child support from defendant. Briefly summarized, the evidence shows the following:

Plaintiff and defendant were casual acquaintances who met in December of 1980. On or about 20 February 1981, plaintiff telephoned defendant and arranged a dinner date with him. This was their first date. After dinner, the two went to defendant's house for drinks. Defendant made a fire in the fireplace and he and plaintiff began to hug and kiss on the floor in front of the fire. Plaintiff suggested that they move to a more comfortable location in order to have sex. Plaintiff and defendant moved to defendant's bed and they had sexual intercourse. Plaintiff spent the night with defendant. They had sexual intercourse again the next morning. Defendant used no birth control method or device. That afternoon, defendant asked plaintiff what method of birth control she used. She indicated that she used the rhythm method but that she was in the "safe" part of her cycle. Plaintiff spent the night of 21 February 1981 with defendant and they had sexual intercourse again.

Plaintiff testified that she had a regular menstrual cycle and that her menstrual period began around the end of each month. In practicing the rhythm method, plaintiff did not use the recommended techniques of checking her basal temperature and the sugar content of her cervical mucous. Instead, she used a calendar, determining the "safe" part of her menstrual cycle by counting back from the approximate beginning of her next menstrual period. According to plaintiff's method, her next menstrual period should have started on 26 or 27 February 1981. It did not.

Plaintiff and defendant had sex again on 1 March 1981. Plaintiff underwent a pregnancy test and on or about 19 March 1981

determined that she was pregnant. Sometime thereafter, she had sexual intercourse with another man.

In April of 1981, plaintiff told defendant that she was pregnant and that she thought that he was the father. Though marriage and abortion were discussed, neither occurred and plaintiff gave birth to a healthy 9 pound, 1 ounce baby boy. Blood grouping tests were performed on plaintiff, defendant and the child. These tests showed a strong probability that defendant was the father.

Additional facts will be discussed where pertinent in the body of the opinion.

On 3 August 1983, plaintiff filed a complaint in district court for Forsyth County seeking to have defendant declared the father of her child, to have custody of the child placed with her, and to have defendant ordered to pay reasonable child support.

Defendant responded, denying plaintiff's allegations of paternity and denying any financial responsibility for the child. Defendant counterclaimed against plaintiff for fraud, alleging that plaintiff had intentionally deceived him regarding birth control in order to persuade him to engage in sex with her. He claimed that she seduced him and had intercourse with him for the sole purpose of procreation. Defendant claimed compensatory damages for the alleged fraud in the amount of $85,000.

The matter was tried before a jury. At the close of the evidence plaintiff moved for a directed verdict as to defendant's counterclaim and the court allowed the motion. Plaintiff's motion for directed verdict was denied and the jury returned a verdict for defendant. On the motion of plaintiff, however, the court entered judgment n.o.v. on 13 December 1980, determining defendant to be the father of the child. The court initially denied plaintiff's alternative motion for a new trial, but later allowed plaintiff's amended motion, granting plaintiff a new trial if the judgment n.o.v. was reversed or vacated on appeal. Defendant gave oral notice of appeal from the entry of judgment n.o.v. for plaintiff on the paternity issue.

A subsequent hearing was held before the court on the issues of child custody and support on 30 December 1980. Plaintiff was awarded custody of the child and defendant was ordered to pay

child support and attorney fees. Defendant gave oral notice of appeal from this order. Written orders were prepared and signed by Judge Tanis on 27 and 29 February 1984.

*Pettyjohn and Molitoris, by Anne Connolly, for plaintiff-appellee.*

*David B. Hough for defendant-appellant.*

EAGLES, Judge.

I

[1] In his first assignment of error, defendant contends that the trial court should not have entertained plaintiff's motion for judgment n.o.v. because plaintiff had not made the prerequisite motion for directed verdict in accordance with the North Carolina Rules of Civil Procedure. G.S. 1A-1, Rule 50. Defendant correctly notes that a directed verdict made at the close of the evidence is an absolute prerequisite to a motion for judgment n.o.v. *Gibbs v. Duke*, 32 N.C. App. 439, 232 S.E. 2d 489, *disc. rev. denied*, 292 N.C. 640, 235 S.E. 2d 61 (1977); *Glen Forest Co. v. Bensch*, 9 N.C. App. 587, 176 S.E. 2d 851 (1970). Rule 50(a) provides that "[a] motion for a directed verdict shall state the specific grounds therefor." Because plaintiff's counsel indicates that the directed verdict motion was made "for record purposes only," because no specific grounds were stated, and because counsel for plaintiff chose not to argue it, defendant contends that the motion was not a proper motion under Rule 50(a) and that the later motion for judgment n.o.v. was thus not properly before the trial court. This contention is without merit.

Although plaintiff raised three issues in her complaint — paternity, custody and support — only the paternity issue was before the jury. *Searcy v. Justice*, 20 N.C. App. 559, 202 S.E. 2d 314, *cert. denied*, 285 N.C. 235, 204 S.E. 2d 25 (1974). Defendant had raised by counterclaim the issue of fraud. When plaintiff made her motion, evidence had been presented only on these two issues. Obviously, the paternity issue had to be decided before the court could decide the issue of fraud. Just as obviously, it was the paternity issue that was the focus of plaintiff's motion. Counsel indicated as much when the motion was made. The obvious, if unstated, grounds for plaintiff's motion, as with any

directed verdict motion made by a party with the burden of proof, was that the evidence established the fact in issue so clearly that no inference to the contrary could be drawn by a jury. *Snipes v. Snipes*, 55 N.C. App. 498, 286 S.E. 2d 591, *aff'd per curiam*, 306 N.C. 373, 293 S.E. 2d 187 (1982). While the better practice is to state specific grounds for a directed verdict motion, it is not necessary where, as here, the issue is identified and the grounds for the motion are apparent to the court and the parties. *Humphrey v. Hill*, 55 N.C. App. 359, 285 S.E. 2d 293 (1982). Even if the grounds were not apparent, we note that defendant waived his objection to the form of the motion by failing to note an objection at trial. *Id.; Byerly v. Byerly*, 38 N.C. App. 551, 248 S.E. 2d 433 (1978). Plaintiff's motion for judgment n.o.v. was properly entertained by the trial court and defendant's first contention is without merit.

## II

The same grounds, more specifically stated, were raised in plaintiff's written motion for judgment n.o.v. That motion read in part as follows:

5. This verdict and the judgment entered thereon should be set aside for the following reasons:

a. That while the plaintiff has burden of proof, plaintiff's right to judgment is established by defendant's evidence and her right of judgment, therefore, does not depend upon the credibility of her witnesses;

b. That an examination of all of the evidence demonstrates that there is no conclusion to be drawn other than that the defendant is the father of plaintiff's child, William George Price, and, therefore, there is no genuine issue of fact.

In his second assignment of error, defendant contends that the court erred in allowing plaintiff's motion for judgment n.o.v. His argument is twofold: first, he argues that the pertinent statute, G.S. 49-14, imposes a heavy burden of proof on the plaintiff in that it requires that paternity be established beyond a reasonable doubt; second, he argues that a motion for judgment n.o.v. likewise puts a heavy burden on the plaintiff, requiring her to establish the fact in issue as a matter of law, leaving no room

for doubt as to defendant's paternity of the child. By either standard, defendant contends that plaintiff's evidence was insufficient and that her motion for judgment n.o.v. should not have been allowed. We disagree.

A motion for judgment n.o.v. is essentially a renewal of a motion for directed verdict, *Harvey v. Norfolk Southern Ry.*, 60 N.C. App. 554, 299 S.E. 2d 664 (1983), and the same standards govern the trial court's consideration of it as for a directed verdict motion. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974). Those standards are clearly established in our law.

> A motion for judgment notwithstanding the verdict presents the question of whether the evidence was sufficient to entitle the plaintiff to have a jury pass on it. *Hunt v. Montgomery Ward and Co., Inc.*, 49 N.C. App. 642, 272 S.E. 2d 357 (1980). The evidence must be considered in the light most favorable to the party opposing the motion, and the opponent is entitled to the benefit of every reasonable inference which may legitimately be drawn from the evidence, and all conflicts in the evidence are resolved in favor of the opponent. *Potts v. Burnette*, 301 N.C. 663, 273 S.E. 2d 285 (1981).

*Morrison v. Kiwanis Club*, 52 N.C. App. 454, 462, 279 S.E. 2d 96, 101, *disc. rev. denied*, 304 N.C. 196, 285 S.E. 2d 100 (1981). This assignment of error raises the issue of whether a judgment n.o.v. in favor of the party with the burden of proof is appropriate, especially where the proof depends in part on the credibility of witnesses.

[2] Ordinarily, the question of credibility is one for the jury and, where the movant's case depends to any extent on witness credibility, a directed verdict or judgment n.o.v. is rarely proper. *See, e.g., Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971); *Stutts v. Green Ford*, 47 N.C. App. 503, 267 S.E. 2d 919 (1980); *Ludwig v. Hart*, 40 N.C. App. 188, 252 S.E. 2d 270, *disc. rev. denied*, 297 N.C. 454, 256 S.E. 2d 807 (1979). It used to be the rule that a directed verdict was never proper in those circumstances. *Cutts v. Casey, supra.* However, our Supreme Court pointed out in *NCNB v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979), that there is no constitutional or procedural impediment to granting a directed verdict in favor of the party with the burden of proof when the

credibility of the movant's witnesses was "manifest as a matter of law." *Id.* at 537, 256 S.E. 2d at 396. Although unable to formulate a general rule, the court noted three "recurrent situations" where the credibility of a movant's evidence was manifest:

> (1) Where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests. [Citations.]

> (2) Where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents. [Citations.]

> (3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to specific areas of impeachment and contradictions."

*Id.* at 537-38, 256 S.E. 2d at 396, *quoting Kidd v. Early*, 289 N.C. 343, 370, 222 S.E. 2d 392, 410 (1976). Especially where credibility is concerned, the distinction between issues of law and issues of fact is difficult to draw precisely. "[W]hile credibility is generally for the jury, courts set the outer limits of it by preliminarily determining whether the jury is at liberty to disbelieve the evidence presented by movant." *Id.* at 538, 256 S.E. 2d at 396. *See generally*, 9 Wright and Miller, Federal Practice and Procedure, Section 2535 (1971 and Supp. 1983); Note, 16 Wake Forest L. Rev. 607 (1980).

[3] Though the *NCNB v. Burnette* court speaks of three situations where the credibility of a movant's evidence may be manifest, those situations are not limitations, merely observations drawn from reported cases. The evidence in this case does not fit neatly into any one of the three situations noted in *NCNB v. Burnette*. It is nevertheless manifestly credible in our opinion.

Most of the evidence in this case is not in dispute. Though his response denies it, defendant admitted at trial that he had sexual relations with plaintiff three times over the weekend of 20 and 21 February 1981 and again on 1 March 1981. He did not use any birth control method and did not ascertain whether plaintiff was using any birth control method before having sex with her. A nine pound, one ounce healthy baby was born to plaintiff nearly nine months later. Defendant's own expert, Dr. Meis, expressed his opinion on cross examination that plaintiff's baby was prob-

ably full term. He performed a standard gestation period calculation, based on plaintiff's testimony regarding her menstrual cycle and assuming sexual contact on 20 February 1981, that put an estimated date of birth at 11 November 1981, only two days later than plaintiff's child was actually born. Plaintiff's uncontradicted testimony was that defendant was the only man with whom she had sexual contact between December 1980 and late March 1981, when her tests revealed she was pregnant. Blood grouping tests performed on plaintiff, defendant, and the child showed a high probability that defendant was the father.

Clearly, plaintiff in this case is an interested witness and her testimony would ordinarily be subject to question on that ground. By his own testimony, however, defendant corroborates most of plaintiff's testimony and refutes none of it. He does not point to specific inconsistencies in plaintiff's evidence nor does he attempt to impeach her expert witness. Defendant does not question the authenticity of the document showing the results of the blood test. He does not pursue or support with any authority the questions he purports to raise concerning the reliability of the tests or the credibility of plaintiff's expert witness. At best, defendant raises only latent doubts as to the credibility of plaintiff's evidence. This is clearly not enough to defeat her case. *Conner v. Spanish Inns*, 294 N.C. 661, 242 S.E. 2d 535 (1978).

Relying on uncontradicted facts and drawing all permissible inferences in defendant's favor, the evidence admits of only a bare statistical possibility that defendant is not the father of the child. Based on defendant's admissions concerning sexual contact with plaintiff, that statistical possibility is less than one-half of one percent. Even if plaintiff's testimony is discounted entirely and none of defendant's admissions of sexual contact considered, the tests alone would show a 96.42% probability that defendant was the father of the child. *See* Comment, 16 Wake Forest L. Rev. 591 (1980). We are aware that blood test results are not absolutely conclusive and that they have been held insufficient, without more, to establish non-paternity. *State v. Camp*, 286 N.C. 148, 209 S.E. 2d 754 (1974) (different type of test). *See* Comment, 16 Wake Forest L. Rev. 591 (1980). We note also that G.S. 8-50.1 does not require a peremptory jury instruction where the results of blood tests tend to establish paternity nor does the statute indicate how much weight is to be attached to blood test results.

However, when combined with facts that are conclusively established by the evidence and defendant's admissions, the test results leave no reasonable question as to the paternity of the child. Defendant here has done no more than raise latent doubts or mere conjecture regarding the credibility of the evidence. We think that the court properly allowed plaintiff's motion for judgment n.o.v.

## III

### a.

[4] Defendant next contends that it was error for the trial court to allow plaintiff's motion for directed verdict on the counterclaim of fraud. The basis of defendant's counterclaim was that plaintiff had tricked him into having sex with her so that plaintiff could have the baby. Rather than denying financial responsibility for the child, however, defendant seeks damages from plaintiff based on estimates of the total child support he would pay during the child's minority.

We note first, in response to plaintiff's argument, that defendant's appeal on this issue is properly before us. Defendant gave oral notice of appeal from the trial court's judgment on the paternity issue in accordance with N.C. App. Rule 3(a)(1). Having given notice of appeal, defendant is entitled to argue to this court the correctness of any ruling by the trial court provided that his exception to that ruling is preserved for appeal in accordance with N.C. App. Rule 10(b). Since the directed verdict on defendant's counterclaim did not finally determine the action or preclude a judgment from which an appeal could be taken, an immediate appeal from the court's order would likely have been dismissed as premature. G.S. 1A-277, 7A-27. Defendant has properly excepted and assigned error to the trial court's ruling; he is entitled to challenge that ruling on appeal from the final judgment of the court.

### b.

Though defendant is entitled to make arguments in support of his assignment of error, we find them to be without merit. The law imposes a support obligation on the biological parents of a child born out of wedlock; the child has a right to that support. *Cogdell v. Johnson*, 46 N.C. App. 182, 264 S.E. 2d 816, 16 A.L.R. 4th 919 (1980). The purpose of an action under G.S. 49-14 is to

establish the identity of the biological father of an illegitimate child so that the child's right to support may be enforced and the child will not become a public charge. *Id.; Wright v. Gann,* 27 N.C. App. 45, 217 S.E. 2d 761, *cert. denied,* 288 N.C. 513, 219 S.E. 2d 348 (1975); G.S. 49-2. *See generally,* Lee, N.C. Family Law, Section 251 (1981). Once paternity is established, the proper custody and amount of support are determined in the same manner as for a legitimate child. G.S. 49-15. In making this determination, the court has considerable discretion but the welfare of the child is the primary consideration. *Holt v. Holt,* 29 N.C. App. 124, 223 S.E. 2d 542 (1976). To determine the rights of an illegitimate child any differently would violate the illegitimate child's constitutional right to equal protection of the law. *Levy v. Louisiana,* 391 U.S. 68, 20 L.Ed. 2d 436, 88 S.Ct. 1509 (1968); *Cogdell v. Johnson, supra.*

By counterclaiming against plaintiff for fraud, defendant seeks to avoid his legal obligation to provide his share of support for the child he fathered. The fact that he seeks damages from plaintiff rather than avoidance of the obligation altogether does not disguise his underlying intention to evade his responsibility to his child and to impede our enforcing of the child's legal and constitutional rights to support. Defendant's argument that he was tricked into fathering a child and should not bear the financial responsibility for it might be appropriate in some circumstances. However, the argument is simply not appropriate in a civil action to establish paternity, either as a defense or a counterclaim. *See L. Pamela P. v. Frank S.,* 59 N.Y. 2d 13, 449 N.E. 2d 713 (1983). The counterclaim was subject to dismissal under Rule 12(b), but plaintiff made no motion. It was not error for the trial court to allow plaintiff's directed verdict motion and dismiss the counterclaim at the close of the evidence.

c.

Because we have determined that defendant could not properly assert his counterclaim in this action, we do not consider whether the trial court erred in excluding certain testimony pertaining to that issue.

IV

[5] Defendant's final assignment of error concerns the trial court's award of attorney fees. Defendant contends that neither

G.S. 49-14 nor G.S. 49-15 contains a specific provision authorizing the award of attorney fees and argues that, without specific statutory authorization, the court may not award them. Defendant argues that even if attorney fees may be awarded in this action, the trial court's findings are not sufficient to support the award and that the evidence in any case would not support the required findings.

As noted above, G.S. 49-15 provides that issues of custody and support of illegitimate children are to be determined just as for legitimate children, once paternity has been established. No other procedure is specified or provided. In actions for custody and support of minor children, the court is clearly authorized to award attorney fees. G.S. 50-13.6 provides in part as follows:

> In an action or proceeding for the custody or support, or both, of a minor child, including a motion in the cause for the modification or revocation of an existing order of custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit.

This statute does not apply to civil actions to establish paternity under G.S. 49-14. We can perceive no reasonable construction of G.S. 50-13.6 that would extend its coverage that far. Accordingly, the trial court in this case was authorized to award reasonable attorney fees for the custody and support actions, but not for the paternity action.

We note that any award of attorney fees must be supported by appropriate findings based on competent evidence. *Hudson v. Hudson*, 299 N.C. 465, 263 S.E. 2d 719 (1980); *Gibson v. Gibson*, 68 N.C. App. 566, 316 S.E. 2d 99 (1984). Here, the order awarding attorney fees to plaintiff contains no finding that plaintiff was acting in good faith, as required by G.S. 50-13.6, *supra*.

For the reasons stated, that part of the court's order of 30 December 1980 awarding attorney fees to plaintiff must be vacated and the cause remanded for further proceedings on the issue of attorney fees. An additional evidentiary hearing may be required. In all other respects, the judgment of the trial court is affirmed.

Affirmed in part; vacated and remanded in part.

Judges WHICHARD and JOHNSON concur.