GUILFORD COUNTY ON BEHALF OF STELLA M. HOLT, PLAINTIFF v.
STEVEN D. PUCKETT, DEFENDANT

No. COA07-761

(Filed 5 August 2008)

**Costs— child support—action on behalf of mother—defendant not child's father—attorney fees assessed against mother— order inequitable**

The trial court's order requiring the mother to pay $750.00 of defendant putative father's attorney fees after he was excluded as the child's father in a paternity proceeding instituted by the county child support enforcement agency on behalf of the mother was inequitable and an abuse of discretion because the agency was the real party in interest, not the mother, since the suit was filed for the economic benefit of the agency; the mother was compelled to participate fully in the action, including naming the individual she believed was her child's biological father, or she would have faced the termination of her child support benefits or possible charges of contempt of court; there was no showing that the mother named defendant as the biological father maliciously, fraudulently, or in bad faith, and the fact that defendant was not in fact the child's father does not prove otherwise; and the fact that plaintiff agency was entitled to file the action is proof that the mother is a woman of limited means, as she was dependant on assistance from the agency for the support of her child. On remand, the trial court may, in its discretion, make findings of fact and conclusions of law determining whether plaintiff agency, not the mother, should bear any portion of defendant's attorney fees pursuant to the appropriate statutory authority.

Judge HUNTER dissenting.

Appeal by plaintiff from an order entered 27 March 2007 by Judge William K. Hunter in Guilford County District Court. Heard in the Court of Appeals 20 February 2008.

*Guilford County Attorney's Office, by Deputy County Attorney Michael K. Newby, for plaintiff-appellant.*

*No brief for defendant-appellee.*

JACKSON, Judge.

The Guilford County Child Support Enforcement Agency ("plaintiff") appeals—purportedly on behalf of Stella M. Holt ("Holt")—an order granting defendant's motion for attorney's fees. After careful review, we reverse and remand this matter to the trial court.

On 17 November 2005, plaintiff filed a complaint seeking to establish paternity, pursuant to North Carolina General Statutes, section 49-14 (2008), and current support, pursuant to North Carolina General Statutes, section 50-13.4 (2008), as well as to recover past paid public assistance from defendant for a juvenile whom Holt claimed was fathered by defendant. [R p. 34-36] On 29 August 2006, defendant filed a response denying paternity and counterclaiming for attorney's fees pursuant to North Carolina General Statutes, section 50-13.6 (2008), and by separate motion requested a paternity test be performed. The paternity test excluded defendant as the father, and the case was dismissed voluntarily by plaintiff on 28 November 2006. On 27 March 2007, the district court granted defendant's motion for attorney's fees, ordering Holt to pay $750.00 of defendant's more than $2,000.00 in accumulated attorney's fees. Plaintiff appeals.

In plaintiff's only argument on appeal, it contends that the trial court abused its discretion by ordering Holt to pay a portion of defendant's attorney's fees. We agree.

We note that the order by the district court purportedly awards attorney's fees to defendant pursuant to North Carolina General Statutes, section 50-13.6. That statute reads: "In an action or proceeding for the custody or support, or both, of a minor child, . . . the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit." This Court has stated explicitly that "[t]his statute does not apply to civil actions to establish paternity under G.S. 49-14. We can perceive no reasonable construction of G.S. 50-13.6 that would extend its coverage that far." *Smith v. Price,* 74 N.C. App. 413, 423, 328 S.E.2d 811, 818 (1985), *rev'd on other grounds by* 315 N.C. 523, 340 S.E.2d 408 (1986).

However, this Court also has stated explicitly that costs involved in prosecuting a paternity action may be awarded under North Carolina General Statutes, section 6-21(10), which states: "Costs in the following matters shall be taxed against either party, or apportioned among the parties, in the discretion of the court: . . . [i]n proceedings regarding illegitimate children under Article 3, Chapter 49 of the General Statutes." *See Napowsa v. Langston*, 95 N.C. App. 14, 26, 381 S.E.2d 882, 889 (1989) ("attorney's fees incurred in prosecuting paternity actions may not be awarded under Section 50-13.6, but may only be assessed as costs under Section 6-21(10)."). Award of attorney's fees as costs under section 6-21(10) is discretionary. N.C. Gen. Stat. § 6-21.

Plaintiff argues that assessing attorney's fees to Holt in the instant case is inequitable. Although we have been unable to find any precedent in this jurisdiction—or any other—addressing the peculiar fact situation presented in the instant case, we hold that the laws governing child support enforcement in this state, along with general principles of equity, do not support the assessment of attorney's fees against Holt. North Carolina General Statutes, section 110-128 (2008), states the purposes of Article 9 of the North Carolina General Statutes:

The purposes of this Article are to provide for the financial support of dependent children; to enforce spousal support when a child support order is being enforced; to provide that public assistance paid to dependent children is a supplement to the support required to be provided by the responsible parent; to provide that the payment of public assistance creates a debt to the State; to provide that the acceptance of public assistance operates as an assignment of the right to child support; to provide for the location of absent parents; to provide for a determination that a responsible parent is able to support his children; and to provide for enforcement of the responsible parent's obligation to furnish support and to provide for the establishment and administration of a program of child support enforcement in North Carolina.

Because Holt was receiving child support benefits from plaintiff, plaintiff had both "the authority and the duty to pursue an action against the responsible parent for the maintenance of the child and recovery of amounts paid by the county for support of the child." *Settle v. Beasley*, 309 N.C. 616, 618, 308 S.E.2d 288, 289 (1983). Plaintiff filed the instant suit, and, notwithstanding the fact that the

suit purportedly was filed "on behalf of" Holt, plaintiff was the real party in interest, not Holt. The suit was filed for the economic benefit of plaintiff, not of Holt. *Id.* at 618-19, 308 S.E.2d at 289. Upon the filing of this action by plaintiff, Holt was required to assist plaintiff in the prosecution of the action, or face the termination of her child support benefits, and possible charges of contempt of court resulting in fines and jail time.[1] N.C. Gen. Stat. § 110-131 (2008); *see also Beasley,* 309 N.C. at 618, 308 S.E.2d at 289.

The dissent points out that Holt "is a named plaintiff in every document in the record on appeal." "[T]he courts will look beyond the nominal party whose name appears of record and consider the legal questions raised as they may affect the real party in interest." *Id.* at 618, 308 S.E.2d at 289. Furthermore, we do not, as the dissent suggests, indicate that only a real party in interest is subject to orders of the trial court. What we do hold, as is further addressed below, is that in this instance and on these facts, to hold Holt responsible for attorney's fees for an action she did not initiate, and in which she was required to participate, would be inequitable.

Plaintiff's claims against defendant constituted subrogation, pursuant to which plaintiff stepped into the shoes of Holt, and obtained all her rights and obligations in the action filed against defendant. *In re A Declaratory Ruling by the N.C. Comm'r of Ins. Regarding 11 N.C.A.C. 12.0319,* 134 N.C. App. 22, 24, 517 S.E.2d 134, 137 (1999); *Trustees of Garden of Prayer Baptist Church v. Geraldco Builders, Inc.,* 78 N.C. App. 108, 114, 336 S.E.2d 694, 697-98 (1985); *see also In re Parentage of I.A.D.,* 126 P.3d 79 (Wash. Ct. App. 2006).

"The doctrine [of subrogation] is one of equity and benevolence, and, like contribution and other similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential and perfect justice between all the parties without regard to form, and its object is the prevention of injustice." *Jeffreys v. Hocutt,* 195 N.C. 339, 342, 142 S.E. 226, 227 (1928) (quotes and citation omitted); *see also Wallace v. Benner,* 200 N.C. 124, 130-32, 156 S.E. 795, 798-99 (1931). "It is a fundamental premise of equitable relief that equity regards as done that which in fairness and good conscience ought to be done." *Lankford v. Wright,* 347 N.C. 115, 118, 489 S.E.2d 604, 606 (1997) (quotes and citations omitted). "Equity regards substance, not form". *Id.* And equity "will not allow technicalities of procedure to defeat that which is eminently right and just". *Id.*

---

1. Contrary to the assertion of the dissent, we do not "predict" this outcome, we merely point out that pursuant to statute, it is "possible."

GUILFORD CTY. EX REL. HOLT v. PUCKETT

[191 N.C. App. 693 (2008)]

Holt did not file the instant action, was not the real party in interest, and was compelled to participate fully in plaintiff's action, including naming the individual she believed was her child's biological father. There is no showing in the record that Holt named defendant as the biological father maliciously, fraudulently, or in bad faith. The fact that defendant was not, in fact, the child's father does not prove otherwise.

The dissent appears to equate naming defendant as the biological father in the action as proof of intentional deception on the part of Holt. We are not prepared to make that leap, and the trial court made no such finding of fact. The trial court did state in its third finding of fact that *defendant alleged* in an affidavit that he "is not now and never has been acquainted with [Holt]." This is not enough to constitute an adoption of the allegations of the defendant as facts by the trial court. *In re Anderson*, 151 N.C. App. 94, 96-97, 564 S.E.2d 599, 601-02 (2002). Therefore, the trial court's findings of fact do not support the dissents assertion that "[c]learly, the trial court believed defendant had no relationship with plaintiff mother, a finding that would justify an award of attorney's fees." As the trial court does not make any findings of fact concerning Holt's honesty, motivation or good faith in initially naming defendant as the biological father, and as it further makes no finding of fact in which it adopts defendant's assertion that he did not know Holt, we may not, as the dissent suggests, infer the trial court's opinion—one way or the other. *Id.* We hold that the assessment of attorney's fees to Holt was inequitable—neither right nor just.

By footnote, the dissent states: "there was nothing to prohibit plaintiff agency from contacting defendant when plaintiff mother named him as the father and instigating paternity testing at that time before filing an action against him." We are in complete agreement with the dissent on this point. Had plaintiff taken this course of action, neither defendant nor Holt would have been forced to participate in this action, and neither would have been assessed attorneys fees by the trial court. The dissent's observation lends support to the equity of holding that if attorney's fees are to be assessed to either of the "named" plaintiffs, it is more equitable that Guilford County, not Holt, bear that burden.

The very fact that plaintiff was entitled to file the instant action is proof that Holt is a woman of limited means, as she was dependant on assistance from plaintiff for the support of her child. In light of the stated purposes of Article 9, in particular "to provide for the financial

support of dependent children", the assessment of attorney's fees against Holt—who is not in a position to provide for her child without assistance—for an action filed by plaintiff, is not only inequitable, but contrary to the stated purposes of the Article which granted plaintiff the right and duty to file the action in the first place.[2]

We believe the dissent is correct in emphasizing our citation above, stating that equity requires 'the doing of complete, essential and perfect justice between *all the parties* without regard to form, and its object is the prevention of injustice.' " *Hocutt*, 195 N.C. at 342, 142 S.E. at 228 (emphasis added). We are in no manner ignoring the rights of defendant in this opinion. The trial court determined that it would be equitable for defendant to receive some compensation for his attorney's fees, and we do not quarrel with that determination. Our quarrel merely is with the trial court's choice of the source of that compensation.

We hold that the trial court abused its discretion, and reverse that portion of the trial court's order assessing $750.00 in attorney's fees to Holt, and remand to the trial court for further action in accordance with this holding. The trial court may, in its discretion, make findings of fact and conclusions of law determining whether plaintiff, not Holt, should bear any portion of defendant's attorney's fees, pursuant to the appropriate statutory authority.

Reversed and Remanded.

Judge HUNTER dissents in a separate opinion.

Judge BRYANT concurs.

HUNTER, Judge, dissenting.

Because I believe the trial court did not abuse its discretion in granting Steven D. Puckett's ("defendant") motion for attorney's fees against Stella M. Holt ("plaintiff mother"), I respectfully dissent.

I.

On 11 November 2005, the Guilford County Child Support Enforcement Agency ("plaintiff agency") filed a complaint seeking to

___

2. The dissent misses our point concerning the "stated purpose of Article 9." We are not suggesting that Holt's financial support from plaintiff will be terminated, but that a mother who requires financial support to care for her child can ill afford to pay $750.00, and that were she forced to do so, it may well negatively impact that child, whose support is one of plaintiff's stated purposes for existing in the first place.

establish paternity and current support, as well as to recover past paid public assistance from defendant for a juvenile whom plaintiff mother claimed was fathered by defendant. On 10 August 2006, defendant requested a paternity test be performed, and on 12 August 2006, he filed a response denying paternity and counterclaiming for attorney's fees pursuant to N.C. Gen. Stat. § 50-13.6. The paternity test excluded defendant as the father, and the case was voluntarily dismissed by plaintiff agency on 28 November 2006. On 27 March 2007, the trial court granted defendant's motion for attorney's fees, ordering that plaintiff mother pay $750.00 of his more than $2,000.00 in accumulated attorney's fees. Plaintiff agency appeals on behalf of plaintiff mother.

## II.

The majority holds that an award of attorney's fees under N.C. Gen. Stat. § 6-21(10) is inequitable, as there is no showing the plaintiff mother acted in bad faith in naming defendant as the father. However, because as the majority notes there is no precedent in this or any other jurisdiction addressing such a claim, plaintiff agency can cite to no law that requires bad faith be shown before such costs may be awarded.

The majority argues that the spirit of the laws governing child support enforcement as well as principles of equity forbid the trial court from holding plaintiff mother responsible for the attorney's fees incurred by defendant in defending her false claim of paternity. I disagree.

### A. Party in interest

The majority makes much of the fact that the real party in interest in this case is in fact plaintiff agency, not plaintiff mother. While it is certainly true that any monetary recovery would go to plaintiff agency, the majority does not explain how this fact deprives the trial court of authority to grant defendant's motion as to her. Plaintiff mother is a named plaintiff in every document in the record on appeal, and obviously the reason defendant became involved in the case.[3] I have found no law to suggest that, because a named party is

---

3. I note also that no party argued to this Court that plaintiff agency might be held responsible for attorney's fees, as the majority suggests. Further, there was nothing to prohibit plaintiff agency from contacting defendant when plaintiff mother named him as the father and instigating paternity testing at that time before filing an action against him.

not the real "party in interest," that party is immune from orders by the trial court.

Further, the law does not support the majority's dire prediction of fines and jail time for plaintiff mother had she not named defendant as the father of her child. Per statute, a parent *may* be found in contempt if she "fails or refuses" to aid in the search for a missing parent. N.C. Gen. Stat. § 110-131(a) (2007). *Settle v. Beasley*, 309 N.C. 616, 308 S.E.2d 288 (1983), the case much cited by the majority, describes this as "cooperat[ing] with the county in its efforts to get support from the father of the child." *Id.* at 619, 308 S.E.2d at 289. Nothing in our statutes, our case law, or the record indicates that plaintiff mother was in danger of imminent criminal sanctions and therefore forced to name someone—anyone—as the potential father to enable plaintiff agency to pursue a man wholly innocent of any involvement in this case. I would note further that neither of the two duties imposed on plaintiff mother by statute and common law—to aid in the search for the missing father and cooperate with the county in obtaining support from the father once identified—are furthered by the provision of untruthful information as to the potential father.

Finally, I fail to see how the stated purpose of Article 9—"to provide for the financial support of dependent children"—affects the issue before this Court: Whether plaintiff mother should be held responsible for $750.00 of defendant's attorney's fees. N.C. Gen. Stat. § 110-128 (2007). Plaintiff mother has been receiving financial support for her child from plaintiff agency, and nothing in the record suggests she will lose that support regardless of the outcome of this appeal.

## B. Principles of equity

Before discussing how the principles of equity apply to this case, I first note that the awarding of attorney's fees in this case was in the discretion of the trial court. That discretion includes consideration not only of what is equitable under the specific circumstances of each case, but also the parties' ability to pay any judgment against them. The fact that plaintiff mother receives child support should not make her immune from an order by the trial court to pay $750.00 of defendant's attorney's fees—less than half the total costs he incurred—in defending himself from plaintiff mother's false accusations.

In discussing how plaintiff mother's rights were assigned to plaintiff agency via subrogation—an equitable doctrine—the majority cites to the following description of equity: " '[T]he doing of complete,

essential and perfect justice between all the parties without regard to form, and its object is the prevention of injustice.' " *Jeffreys v. Hocutt,* 195 N.C. 339, 342, 142 S.E. 226, 227 (1928) (citation omitted). The majority later states that the fact there "is no showing in the record" that plaintiff mother named defendant "maliciously, fraudulently, or in bad faith" and that defendant was not actually the father of the child at issue is, essentially, irrelevant to our inquiries. I cannot reconcile these two statements logically.

First, the record contains evidence from which the trial court could have inferred that plaintiff mother acted in bad faith in naming defendant. In his affidavit, filed on 8 September 2006, defendant testified after being duly sworn to this effect:

1. I am a citizen and resident of the State of Florida.

2. I was served with a Summons and Complaint in this action by certified [mail] on or about May 30, 2006.

3. I have never resided in High Point, North Carolina.

4. I am not now and never have been acquainted with [plaintiff mother].

5. I did not engage in an act of sexual intercourse within the State of North Carolina which could have resulted in the conception of the minor child who is the subject of this action.

6. I deny that I am the natural father of the child.

7. I request that the court order that the parties and child submit to genetic marker testing to establish that I am not the father of the minor child.

As noted above, that genetic marker testing established that defendant could not be the father of the minor child at issue.

In its order awarding attorney's fees to defendant, filed 27 March 2007, the trial court made the following findings of fact:

1. Plaintiff [agency] filed the instant action for child support on behalf of [plaintiff mother on] or about November 17, 2005, alleging that Defendant is the biological father of the minor child [name redacted].

2. Defendant timely filed a motion to dismiss and an answer denying the allegations of the complaint and requesting paternity testing.

3. Defendant further filed an Affidavit alleging that he has never resided in High Point, North Carolina; that he is not now and never has been acquainted with [plaintiff mother]; that he did not engage in an act of sexual intercourse within the State of North Carolina which could have resulted in the conception of the minor child who is the subject of this action; and that he is [not] the natural father of the child.

4. Thereafter, the parties and the minor child submitted to paternity testing. The results of the genetic marker test confirm that Defendant is not the father of the minor child.

5. The underlying action was voluntarily dismissed by [plaintiff agency] upon receipt of the test results.

6. Defendant is a resident of the State of Florida and was forced to retain counsel to defend him in this matter.

7. To date, Defendant has incurred attorney's fees in the amount of $2,018.75 in defense of Plaintiff[ mother's] claims.

8. Defendant is an interested party, acting in good faith, who is without the means to defray the costs of defending this action.

9. [Plaintiff mother] should share in the expenses incurred by Defendant.

The record reflects no evidence that plaintiff mother had a good faith basis for naming defendant. Clearly, the trial court believed defendant had no relationship with plaintiff mother, a finding that would justify an award of attorney's fees.

Surely the principles of equity—" 'the doing of complete, essential and perfect justice *between all the parties* without regard to form, and its object is the prevention of injustice,' " *Jeffreys*, 195 N.C. at 342, 142 S.E. at 228 (citation omitted; emphasis added)—apply to defendant as well as to plaintiff mother. Defendant was, on no apparent basis, haled into court in a foreign state to be held responsible for a child that had no relation to him and forced to incur thousands of dollars in legal fees defending an entirely spurious action. It is surprising, therefore, that in all the majority's consideration of fairness to plaintiff mother, no mention of defendant's position is made.

I do not believe that the principles of equity required the trial court to ignore plaintiff mother's role in this suit, nor this Court to find that the trial court abused its discretion in doing so.

III.

Because I believe the trial court did not abuse its discretion in awarding reasonable attorney's fees against plaintiff mother, I would affirm.