REBECCA C. CHAMBERS, ADMINISTRATRIX OF THE ESTATE OF JOHN R. TUCKER, v. DEBORA TUCKER BYERS AND HUSBAND, FRANK BYERS; REBECCA C. CHAMBERS AND HUSBAND, J. C. CHAMBERS; MELVIN L. TUCKER AND WIFE, BESSIE TUCKER; RUFUS CARTER TUCKER AND WIFE, EMMA TUCKER; LILLIE TUCKER BEAVER AND HUSBAND, LEWIS BEAVER; RACHEL ELIZABETH STEVENS AND HUSBAND, JIM STEVENS; PEARL SHARP TUCKER, MATTIE BELL TUCKER, LEE ALFRED TUCKER, ROBAH MacKHILRY TUCKER AND WIFE, MARY TUCKER; WALTER TUCKER REDMOND AND WIFE, MILDRED REDMOND; MANUEL TUCKER REDMOND; CALLIE VAREE REDMOND; EMMIT EUGENE TUCKER AND WIFE, MAY LACKEY TUCKER; WILLIAM JOY BRYANT TUCKER AND WIFE, ETHEL TUCKER; DOLLIE McLELLAN TUCKER AND WIFE, ETHEL TUCKER; CALLIE BELLE GRYDER AND HUSBAND, LUM GRYDER; WILLIAM PRESS LEWIS; ROBERT HARRIS TUCKER AND WIFE, GRACE TUCKER; JOHN WILLIAM LEWIS; SARAH TUCKER; BLANCHE TUCKER DAVIS AND HUSBAND, FRANK DAVIS; BEVARD TUCKER, NEVET TUCKER; ANNIE RACHEL LAMBETH AND HUSBAND, LEE LAMBETH; STANLEY SILAS HAM AND WIFE, EMMA BURGESS HAM; LEE ROME HAM AND WIFE, EDDA HEAD HAM; MARICA LIZZIE LAMBETH AND HUSBAND, EDWARD LAMBETH; ROSA ESTELLE HAM; DORCAS MAY SHAVER AND HUSBAND, ROBERT SHAVER; FRED PARK HAM, AND DOCK DANIEL, HEIRS-AT-LAW (ORIGINAL PARTIES DEFENDANT), AND LUCY BOWERS KNIGHT (ADDITIONAL PARTY DEFENDANT).

(Filed 9 November, 1938.)

**1. Wills § 1—**

An agreement to adopt a minor and make her his heir, made between the person desiring to adopt the minor and the minor's parents, as the respective parties to the agreement, indicates that the instrument is not intended as a will. Michie's Code, 4131.

**2. Adoption § 6—**

An agreement to adopt a minor, made between the person desiring to adopt the minor and the minor's parents, as the respective parties to the agreement, is not intended as an "Adoption of Minors" under ch. 2, Michie's Code.

**3. Contracts § 1—**

Persons *sui juris* may make any contract if it is not contrary to law or public policy.

**4. Contracts § 8—**

The intent of the parties as gathered from the language used, the subject matter and purpose of the agreement, is controlling in interpreting the contract.

**5. Wills § 4: Contracts § 19—Minor may sue on contract to devise made with her parents by person desiring to adopt her.**

Intestate made a written agreement with the parents of a minor to adopt the minor and make her his sole heir in consideration of the par-

ents agreeing to the adoption and agreeing not to induce the minor to leave his lawful custody. The adoption was never made, but the minor lived with intestate and his wife as their child, and there was no evidence of repudiation of the contract, but only that intestate failed to fulfill it by executing a will. *Held:* The agreement being in writing, the statute of frauds does not apply, C. S., 988, and the contract to devise is valid and may be enforced by the minor upon her majority as the third person beneficiary.

**6. Wills § 6: Trusts § 15—Equity will enforce valid contract to devise by declaring heirs at law trustees for beneficiary.**

When a valid, written contract to devise is established, equity will enforce the contract in favor of the beneficiary by declaring the heirs at law trustees for her benefit and decreeing conveyance by them to her, and thus grant specific performance of the contract, and this remedy is not in conflict with the rule that a contract to make a will cannot be specifically enforced and that the courts cannot make a will.

**7. Executors and Administrators § 13a—Person claiming sole seizin has right to determination of issue before sale to make assets.**

While an administrator is entitled to sell lands of the deceased to make assets to pay debts of the estate when the personalty is insufficient, Michie's Code, 74, when a person claims sole seizin under a contract to devise as against the heirs of intestate, such person is entitled to adjudication of her claim of sole seizin before a sale of the property to make assets is ordered, since she may elect to discharge the debts of the estate and the costs of administration to prevent a sale of the lands.

APPEAL by Lucy Bowers Knight from *Warlick, J.*, at May Term, 1938, of IREDELL. Reversed.

This action was instituted by the plaintiff against the defendants for the sale of a certain tract of land, in Iredell County, N. C., containing 108 acres, more or less, to make assets to pay the debts of her intestate, John R. Tucker.

All of the heirs at law of John R. Tucker were duly made parties defendant. The defendant Lucy Bowers Knight, being in possession of the land and claiming the same, was also made a party defendant. In apt time, the defendant Lucy Bowers Knight filed an answer setting up that she was entitled to the land in fee simple, subject to the debts of John R. Tucker, deceased, under and by virtue of a valid written contract between her father, Charles M. Bowers, and John R. Tucker. Under her first cause of action she claims and alleges that she was entitled to said land under said written contract as the adopted daughter of the said John R. Tucker, and in her second cause of action she claims and alleges that she is entitled to said tract of land under said written contract on the ground that the said John R. Tucker, in writing, contracted and agreed to make her his sole and only heir. None of the defendants except the defendant Lucy Bowers Knight filed an answer.

CHAMBERS *v.* BYERS.

The plaintiff filed a reply denying the claims of the defendant˙ Lucy Bowers Knight.

"Exhibit A"—"Article of Agreement between Charles Madison Bowers of the (1st) First part and John and Laura Isabelle Tucker of the (2nd) Second part—

"To All Whom it May Concern, Greeting—Know all men by these Presents—That I the said C. M. Bowers, of the (1st) first part, being the father of Lucy Bowers (a minor of the age of 3 yrs., 9 mos. and 16 days) Three years, nine months and sixteen days, do hereby give my full consent to her adoption as their own child and sole and only heir to the said John and Laura Isabelle Tucker of the (2nd) second part:

"And I the said C. M. Bowers of the (1st) first part, do hereby still further agree that the said John and L. Isabelle Tucker of the (2nd) second part shall have full and sole control of that part of the estate owned by (Jessie Watson) deceased, he being the father of Martha Elizabeth Watson deceased and wife of said C. M. Bowers of the (1st) first part, and mother of said Lucy Bowers (the minor herein mentioned) he being of the County of Wilkes and State of North Carolina.

"And I the said C. M. Bowers of the (1st) first part do hereby covenant and agree not to induce or cause to be induced, the said Lucy Bowers (herein mentioned) to leave the lawful custody of the said John and Isabelle Tucker of the (2nd) second part;

"And we the said John and Isabelle Tucker of the (2nd) second part do hereby covenant and agree to adopt the said Lucy Bowers (herein mentioned) as our own child, and that we will well clothe, feed and educate her, providing for all her temporal wants to the best of our ability. And we, the said John and Isabelle Tucker of the (2nd) second part do still further agree to make said Lucy Bowers (herein mentioned) our sole and only heir to what we, the said John and Isabelle Tucker of the (2nd) second part may die possessed of, and that any violation of the above on our part shall make this contract null and void.

"Granting permission to said C. M. Bowers of the (1st) first part to visit her at any time.

"Done this fifth day of March, 1885, one thousand eight hundred and eighty-five.                                    Chas. M. Bowers   (Seal).

"A. P. Sharpe—being a Justice of the Peace in and for the said County and State of North Carolina.

"My hand and private seal.          A. P. Sharpe J. P.   (Seal).
          Feb. 5, 1885                 Signed    J. R. Tucker.
"Attest:  A. P. Sharpe
"Witness :"

The judgment of the court below is as follows: "This cause coming on to be heard and being heard before his Honor, Wilson Warlick, Judge

presiding at the May, 1938, Regular Term of the Superior Court of Iredell County, and it appearing to the court that this is an action instituted before the clerk, as by statute required, by the administratrix of the intestate to impound the lands of the deceased to make assets to pay debts, and that all of the blood relationship, collateral and otherwise, of the intestate, were made parties defendant by the administratrix, and that subsequently an amendment to the petition was had and summons was ordered issued for the answering defendant, and that the cause coming on to be heard, after judgment to sell the land had been entered by the clerk of the Superior Court against all the defendants save the defendant Lucy Bowers Knight; and it further appearing to the court that in the trial of the action after reading of the pleadings, the defendant Lucy Bowers Knight, through her counsel, admitting that the liabilities of the estate of the intestate were in excess of the value of the personal property, and such being made to appear, thereupon the defendant Lucy Bowers Knight assumed the laboring oar and began the introduction of testimony, and at the conclusion of the evidence for the defendant Lucy Bowers Knight, and at the time she rested her case, on motion for judgment as of nonsuit being made by the plaintiff, the motion is sustained: It is, therefore, ordered, adjudged and decreed that the cause of action set up in the action by the defendant Lucy Bowers Knight be and the same is hereby nonsuited. Defendant to pay cost of this term and two witnesses at former term. This 1 June, 1938. Wilson Warlick, Judge Presiding."

At the close of defendant's evidence the plaintiff moved for judgment as in case of nonsuit (C. S., 567) as to the cause of action set up by the defendant Lucy Bowers Knight. The court below granted the motion. The defendant Lucy Bowers Knight excepted, assigned error and appealed to the Supreme Court.

*W. T. Wilson for plaintiff.*
*Land & Sowers and Long & Long for defendants.*

CLARKSON, J. The question involved: Should the plaintiff's motion to nonsuit the defendant Lucy Bowers Knight and the judgment entered thereupon be overruled? We think so.

The decision of this controversy depends upon the construction of Exhibit "A," *supra.* It will be noted that the paper writing says: "Article of Agreement between Charles Madison Bowers of the (1st) first part and John and Laura Isabelle Tucker of the (2nd) second part." This indicates that there was no intention that the paper writing be a will. N. C. Code, 1935 (Michie), section 4131.

The agreement was not intended as an "Adoption of minors," under chapter 2, N. C. Code, *supra.*

In *Truelove v. Parker,* 191 N. C., 430, upon the record in this case, it is held that neither the father nor the mother of the child was a party to the proceeding within the contemplation of the statute, and that the clerk had no jurisdiction of their person, (consequently) he had no jurisdiction of the subject matter. Since the decision in the *Truelove case, supra,* see change Public Laws 1935, ch. 243.

The parties to the agreement in this case did nothing as required by the Adoption Statute. Persons *sui juris* have a right to contract if it is not contrary to law or public policy. The agreement was in writing, therefore it did not come within the statute of frauds. N. C. Code, *supra,* sec. 988. It is well settled that the intention of the parties to a contract controls its interpretation. In ascertaining and effectuating the intent of the parties, the language used, subject matter and the purpose designed may be considered.

In the case at bar the father of Lucy Bowers Knight contracted and agreed with John R. Tucker in 1885, that he would take this minor child of three years, nine months and sixteen days and provide for her all of her temporal wants and to make her his sole and only heir to all that he died possessed of, and upon this agreement the father, C. M. Bowers, agreed that he should not induce, or cause to be induced, the said Lucy Bowers to leave the lawful custody of the said John and Isabelle Tucker, and in so far as this case is concerned, there is no evidence but that the said C. M. Bowers carried out completely his part of the agreement, and that the said Lucy Bowers carried out her part of the agreement. John R. Tucker in his lifetime never attempted to repudiate this written contract to devise all of his property to Lucy Bowers (Knight)— he just neglected to carry out his contract as to making a will in her favor.

In *Stockard v. Warren,* 175 N. C., 283 (285), it is written: " 'There can be no question that a contract upon a sufficient consideration to devise lands is valid and may be enforced in a court of equity, the decree being so drawn as to declare the parties to whom the land is devised, or, in the event of a failure to devise, the heirs at law to hold such lands in trust for the persons to whom the testator had contracted to devise them.' *Price v. Price,* 133 N. C., 503. To the same purport, *East v. Dolihite,* 72 N. C., 566; *Earnhardt v. Clement,* 137 N. C., 94. 'It is settled by a line of authorities which are practically uniform, that while a court of chancery is without power to compel the execution of a will, and therefore the specific execution of an agreement to make a will can not be enforced, yet if the contract is sufficiently proved and appears to have been binding on the decedent, and the usual conditions relating to specific performance have been complied with, then equity will specifically enforce it by seizing the property which is the subject matter of

the agreement, and fastening a trust on it in favor of the person to whom the decedent agreed to give it by his will.' *Naylor v. Shelton,* Am. Ann. Cases, 1914, A. 394."

We think the agreement definite and certain enough for a court of equity to decree specific performance. *Hager v. Whitener,* 204 N. C., 747. In *Lipe v. Trust Co.,* 207 N. C., 794 (795-6), citing numerous authorities, is the following: "It is established by the decisions in this jurisdiction: That when services are performed under an oral agreement, express or implied, that compensation is to be provided therefor in the will of the party receiving the benefit, and no such provision is made, an action will lie to recover for the breach, or to prevent an unjust enrichment, if need be, on the part of the recipient of such services."

In *Sharkey v. McDermott,* 91 Mo., 647, there was a contract to adopt a child and to make it an heir. The child lived with the parties, from the time it was four, for twenty years. Upon the death of the parties, the contract was upheld in favor of the child against the collateral heirs. Effect was given the contract, not by completing the. adoption, but by declaring the collateral heirs trustees and requiring them to convey in accordance with the contract. As was there pointed out, to give effect to such a contract is not making a will for a deceased party; it is merely making "effectual what the parties have themselves agreed upon."

In *Chehak v. Battles,* Iowa—1907, 110 N. W., 330, another contract of adoption was enforced, effect being given to it in the following words: "So, an agreement of adoption may fall short of meeting the statutory requirements and yet be a valid and enforceable contract. The agreement in the case at bar stipulated that plaintiff should 'acquire all the rights of inheritance by law.' This was equivalent to saying she should share in their estate as though their own child, but not as such." Likewise, in *Kofka v. Rosicky,* Nebr.—1894, 59 N. W., 788, a contract of adoption was given effect as to the disposition of property. To the same effect see *Hickox v. Johnson,* Kansas—1923, 213 Pac., 1060, and the note thereto in 27 A. L. R., at p. 1325; also 1 C. J., 1379, s. 27. *Grantham v. Grantham,* 205 N. C., 363, is distinguishable; there the contract was not in writing. *Hager v. Whitener,* 204 N. C., 747, supports the view stated in the instant case.

In *Thayer v. Thayer,* 189 N. C., 502 (508), is the following: "The suit is properly brought. We said in *Parlier v. Miller,* 186 N. C., p. 503: 'We deduce from the authorities that it is well settled that where a contract between two parties is made for the benefit of a third, the latter may sue thereon and recover, although not strictly a privy to the contract.' *Bank v. Assurance Co.,* 188 N. C., p. 753." *Conley v. Cabe,* 198 N. C., 298; N. C. Prac. & Proc. in Civil Cases (McIntosh), p. 193.

In the statement of the case on appeal is the following: "Lucy Bowers Knight filed an answer setting up that she was entitled to the land in

fee simple, subject to the debts of John R. Tucker, deceased." The plaintiff is empowered to sell the land to pay the debts of John R. Tucker. N. C. Code, *supra*, sec. 74.

The answer of the defendant Lucy Bowers Knight raises the issue of equitable sole seizin which must be determined before there can be an order of sale. If the facts are found to be as she alleges, she is entitled to a judgment decreeing specific performance. Thereupon, if she so elects, she may pay to the administrator a sum sufficient to discharge the debts of the estate and the costs of administration and thus discharge the right of the administrator to sell the lands to make assets.

For the reasons given, the judgment of the court below is

Reversed.