Smith *v.* Schwartz, Appellant.

Argued January 11, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused April 19, 1960.

*John W. Wellman,* with him *Frank I. Ginsburg,* and *Chadwick, Curran, Petrikin and Smithers,* for appellant.

. *John T. Curtin,* Special Assistant Attorney General, with him *Max W. Gibbs,* for Commissioner, appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 15, 1960:

.On December 20, 1951, the Seaboard Mutual Casualty Company of Philadelphia was ordered dissolved by the Commonwealth Court in Dauphin County because an examination of its affairs by the Insurance Department of the Commonwealth of Pennsylvania disclosed it to be in a state of insolvency. The Insurance Commissioner took possession of the company's assets in order to liquidate its business and affairs. In the capacity of statutory liquidator, the commissioner petitioned the Court of Common Pleas of Dauphin County for an order directing the company's members and policyholders possessing policies from February 3, 1939 to December 29, 1951, to pay a needed assessment since, under mutual insurance policies, each policyholder is both an insured and insurer. He holds the umbrella of protection over the heads of his fellow-policyholders when they are pelted with losses, and has the right to have the umbrella raised over his head when losses rain down on him.

The assessments were justified because during the periods in question the company's coffers never held a surplus which exceeded the amount of capital required of domestic stock insurance companies transacting the same kind of insurance business, in accordance with the Act of May 17, 1921, P. L. 682, 40 PS §916. Two hearings followed the petition, notice of which appeared in the newspapers and went by first class mail to all members and policyholders. Many members and policyholders appeared at the hearings and contested the proposed additional assessments. On May 11, 1953, the court entered an order granting the liquidator's petition.

Under this order, the Insurance Commissioner brought an action in assumpsit in the Court of Common Pleas of Delaware County, against Morris Schwartz,

individually trading and doing business as Yellow Cab Company of Chester and Blue Cab Company, asking for $4,152.22 additional assessment and against the Yellow Cab Company of Delaware for assessment in the sum of $31,240.35, these assessments being predicated on policies held by these firms from November 17, 1943 to August 15, 1951, and computed in accordance with the formula set forth in the decision of the Court of Common Pleas of Dauphin County.

The defendants filed an answer, setting up new matter and a counterclaim, averring that the officers and directors of the Seaboard Mutual Casualty Company knew in the years 1948, 1949, and 1950, that the company was insolvent and that neither the officers nor the Insurance Commissioner notified them (the defendants) of the insolvency at the time they applied for renewal of their policies, and that, because of this neglectful and culpable silence, the defendants were misled into paying to the insolvent company the total sum of $98,173.54 in premiums. The defendants, therefore, counterclaimed in that sum.

The plaintiff liquidator filed preliminary objections averring that the defendants were attempting to attack collaterally the decision of the Commonwealth Court which had granted the plaintiff's petition for additional assessments; that the defense of prior insolvency and fraud of officers and agents of a dissolved mutual insurance policy is not available in a suit to collect assessments after the dissolution; and that policyholders cannot assert a counterclaim after a company has been dissolved and other policyholders have been ordered to pay additional assessments. Also, that whatever claim the defendants might have against the company must be presented, and pro-rated, with all other claims of creditors of the dissolved company, and that this cannot be done until all assets have been collected.

The court below sustained the preliminary objections, agreeing with the plaintiff that the fraud pleaded by the defendants constituted a collateral attack on the Commonwealth Court and that allegation of fraudulent representations are not a good defense, in any event, to a claim for assessments under the circumstances. While we accept as correct the lower court's final decision, we cannot agree with the reasoning which supports it.

The defendants' allegations as to fraud are not a collateral attack on the order of the Dauphin County Court since such order cannot preclude a showing of fraud against a particular policyholder. The Dauphin County Court, in ordering the collection of additional assessments, did not pass upon, nor did it intend to pass upon, what policies were or were not subject to additional assessment. Neither can we accept the lower court's broad interpretation of the decision in the case of *Taggart Ins. Com. v. Alleva,* 108 Pa. Superior Ct. 329, as precluding in every case the defense of fraudulent representations in an action by a liquidator for assessments.

All to the contrary, the cases cited in *Taggart,* and therein relied upon, such as *Van Dyke v. Baker,* 214 Pa. 168 and *Dettra v. Kestner,* 147 Pa. 566, clearly indicate that, as is true in any other contractual claim, the defense of fraud may be asserted in assessments on mutual policies, *provided the rights of innocent third parties have not intervened.** "Where the rights of innocent third parties have not intervened the principle contended for by defendant is applicable. In such case fraud justifies rescission of the vitiated contract, and as far as possible remits the parties to their former condition; but when, as in this case, the rights of innocent third parties have intervened, and it is essential to their protection that a contract, otherwise

---

\* *Dettra v. Kestner,* 147 Pa. 566.

vitiated by fraud, and therefore voidable, should be sustained, equity requires that it be upheld."

And it is because of *that* provision in the law that we affirm the order of the court below. The pleadings reveal that the rights of innocent third parties *have intervened.* Exhibit B attached to the plaintiff's second amended complaint shows that other persons became policyholders after the defendants had procured their policies which, in the case of Morris Schwartz, date back to November 17, 1943, and, in the case of the Yellow Cab Company of Delaware County, date back to March 25, 1947.

The rights of subsequent and innocent policyholders having intervened, the defendants may not violate the terms of their policies. We so held in *Van Dyke v. Baker,* 214 Pa. 168: "The fraud set up by defendant in the court below will not avail him as a defense as against the rights of bona fide creditors and members of the corporation who became such after the date of the contract of membership entered into by him . . . The rights of creditors and of members which attached after the date of the contract of membership entered into by defendant and before the fraud was discovered and notice thereof given the insurance commissioner are intervening equities . . . A number of policies had been issued and the rights of some creditors had attached between May 3, the date of membership, and the time when the fraud was discovered. The rights of these parties had intervened and were protected under the rule stated."

Of course, as was made clear in the *Van Dyke* case, the plaintiff must carry the burden of proving intervening equities and that burden has been sustained here because it is inevitable from the pleadings that the rights of other policyholders intervened after the procurement by defendants of their policies of insurance.

In their answer the defendants admit the allegations in paragraph 9 of the second amended complaint, which reads: "Defendant was given notice either by letter or by publication in the newspapers of Delaware County or by both such means of the pendency of the hearings in the Court of Common Pleas of Dauphin County referred to in paragraph 4 and 5 above, at which time defendant could have appeared and had been heard."

Thus, the defendants knew, as early as December 20, 1951, when the Dauphin County Court handed down the liquidation order, that the Seaboard Mutual Casualty Company was listing in heavy financial seas, and they at that time knew all the facts they alleged in new matter and counterclaim which they did not file until September 18, 1958, although the complaint had been served in July, 1956. This means that the defendants not only failed to attempt a nullification of policies within a reasonable time after they became aware of the alleged fraud on the part of the insurance company officials, but they waited for more than two years after the commencement of the suit against them to allege the defense of fraud and counterclaim based thereon.

This unreasonable delay prejudiced the rights of other policyholders and creditors of the company who, because of the defendants' inaction, now have the right to rely on the defendants' assessment liability as an asset of the insolvent corporation.

We, therefore, conclude that the defense of fraud and the counterclaim which the alleged fraud supposedly supports, must fail.

The order of the court below is affirmed.