**Rita Anne Ingram LINDSEY, Appellant-Plaintiff,**

v.

**Mary Alice WILCOX and Marvine Alford As Co-Administratrixes of the Estate of Ann E. Ingram, Dec., Appellees-Defendants.**

**No. 1-185A23.**

Court of Appeals of Indiana, First District.

June 24, 1985.

Rehearing Denied Aug. 1, 1985.

---

Buena Chaney, Mann, Chaney, Johnson, Goodwin, & Williams, Terre Haute, for appellant-plaintiff.

Joe E. Beardsley, II, Beardsley & Stengel, Clinton, for appellees-defendants.

ROBERTSON, Judge.

The plaintiff-appellant Lindsey appeals from a decision which denied her petition for a judicial determination that she had been equitably adopted by the decedents Ann E. and Homer Ingram. The trial court denied the petition with this appeal resulting. The issue is framed as being:

Does Indiana follow the doctrine of equitable adoption?

and

If Indiana follows such doctrine, do the findings of fact, the ruling on the 52(B) motion, and the judgment establish that Lindsey was adopted under said doctrine?

We are of the opinion that both issues are answered in the negative and for the reasons stated below, we affirm.

First we note that when the court below has made findings of fact and conclusions of law, the court on appeal only considers that evidence and the reasonable inferences therefrom which support the judgment. In order to appropriately set aside these findings and conclusions, they must be clearly erroneous. *Die & Mold, Inc. v. Western,* (1983) Ind.App., 448 N.E.2d 44.

Our review of the record shows that substantial evidence of probative value supports the findings below and the decision rendered thereon. Specifically, the decedent, Ann Elizabeth Wilcox Ingram (Ann) was born June 4, 1898. She was also known as Ann E. Ingram and Ann W. Ingram. Ann worked as a public school teacher in the Vermillion County Schools for approximately thirty years. On July 2, 1944, at the age of 46, Ann married an attorney from Newport, Indiana, Homer Ingram (Homer). Homer and Ann subsequently died simultaneously in an automobile collision on May 17, 1982. Ann died intestate and the sole owner of real estate and personal property. Surviving Ann were four sisters and one brother. Rita Anne Ingram Lindsey (Rita) was born on August 11, 1943, to Lynn Van Alstine (Lynn) and Alice Van Alstine (Alice) and was named Ruby Mae Van Alstine. Lynn died when Rita was approximately five years old. Alice subsequently married Edward Woodward, and moved to Vermillion County, Indiana. When Rita was fourteen she ran away from home to escape her stepfather's intolerable treatment and her mother's neglect. The police apprehended Rita and placed her in the Vermillion County Jail where Ann interviewed the child in regard to the possibility of Rita living with Ann and Homer. They agreed that Rita would live with Ann and Homer as a member of their family, attend church, be a good student in school, and conduct herself as their daughter. On November 27, 1957,

the Honorable Frank Fisher ordered that Rita be a ward of the Vermillion Circuit Court under the custody of Ann. Rita's legal representative in these proceedings was Homer. The evidence revealed that Ann and Rita agreed to change Rita's name from Ruby Mae Van Alstine to Rita Anne Ingram. They also agreed that Rita would give Homer and Ann a goodnight kiss each evening, a ritual which Rita continued even as a adult. Rita's school records showed Ann and Homer as her parents. A close mother-daughter relationship developed between the two women and at Ann's request, Rita addressed her as "Mother" and Homer as "Papa". At Ann's direction, Rita joined and attended regularly Ann's church, the Methodist Church. Ann habitually introduced Rita to friends, relatives, and acquaintances as "my daughter". When people commented upon Rita's physical likeness to her mother, referring to Ann, neither Rita nor Ann made any attempt at a correction.

In the Spring of 1958, Ann told Rita that she and Homer had discussed formally adopting Rita. Consequently, Homer approached Judge Fisher for permission to adopt Rita. However, Judge Fisher refused, explaining that Ann and Homer, ages sixty and sixty-seven, respectively, were too old. Ann went to the courthouse and had a personal conference with Judge Fisher in an effort to get him to change his mind and to grant the adoption. Judge Fisher refused, a refusal which he upheld to his death in 1967. Consequently, Ann and Homer never legally adopted Rita, although in September, 1960, pursuant to the agreement of both Ann and Homer, Rita legally changed her name to Rita Anne Ingram. Again, Homer represented Rita.

This mother-daughter relationship continued throughout the balance of Ann's life, spanning some twenty-five years and continuing after Rita's marriage in 1961 to Thomas Sandy. Ann was at all relevant times considered the grandmother to Rita's two daughters and the great-grandmother to Rita's grandson. Pursuant to Rita's 1968 divorce, she was awarded custody of the two daughters born of that marriage; however, in 1971, Ann represented by Homer, petitioned the court for and did thereon receive custody of Rita's daughters. Custody was eventually returned to Rita in 1975. Following the simultaneous deaths of Ann and Homer, Rita petitioned the probate court to determine heirship. Based upon the findings recited above, the probate court concluded that because Rita was neither Ann's natural or adopted child, that Rita could not be an heir for inheritance purposes to the intestate estate of Ann E. Ingram.

Generally speaking, the theory of recovery in an equitable adoption case is founded upon either equitable principles or upon the theory of estoppel. In the former it is a judicial remedy for an unperformed contract of legal adoption or, in the alternative, the ordering of specific performance of an implied contract to adopt. The estoppel theory operates to preclude a party from asserting the invalidity of the status of an "adopted" child for inheritance purposes. *In Re Estate of Fox v. Irwin Union Bank & Trust Co.*, (1975) 164 Ind.App. 221, 328 N.E.2d 224. As noted in *Fox, supra*, the courts of this state are reluctant to approve the doctrine because our law of descent and distribution is long-standing, based upon the traditional relationships of marriage, blood or adoption. With other readily available alternatives of disposing of property by will or gift, no compelling reason surfaces to create a judicial doctrine to serve the same purpose when the statutory schemes of probate or adoption seem quite adequate. Further, those states which have applied the doctrine, have done so only upon requiring strict proof, *i.e.*, proof so clear, cogent, and convincing as to leave no doubt that a contract, expressed or implied, to adopt existed. Missing in the record before us is evidence that such an agreement ever existed. Notwithstanding this fact, and although our earlier decision

in *Fox* expressed hesitation in approving the doctrine of equitable adoption, we now hold that this doctrine never has been approved in Indiana and it continues to be denied judicial approval.

Judgment affirmed.

RATLIFF, P.J., and NEAL, J., concur.