**Ruth Elizabeth GARDNER, Respondent,**

v.

**Deward E. HANCOCK, Sr. and Ruth C. Hancock, and Josephine Gardner Broyles and William O. Broyles, Appellants.**

No. 20167.

Missouri Court of Appeals,
Southern District,
Division One.

May 10, 1996.

Motion for Rehearing and Reconsideration
Denied May 29, 1996.

William R. Robb, Price, Fry & Robb, Springfield, for appellants.

Jerry M. (Jay) Kirksey, Douglas, Lynch, Haun & Kirksey, P.C., Bolivar, for respondent.

MONTGOMERY, Presiding Judge.

Ruth Elizabeth Gardner (Respondent), James Gardner's niece, brought a quiet title action with an alternative count for partition against Josephine Gardner Broyles (Appellant).[1] After a bench trial, the trial court determined that Appellant is the equitably adopted daughter of Stanford R. Chapman and Josie E. Chapman and is "judicially estopped" from asserting she is an heir of James Gardner, her natural father. The trial court adjudged that Appellant had no right, title or interest in the real estate in question, and consequently the Hancocks took nothing by Appellant's deed to them. *See supra* note 1. We reverse and remand.

The dispositive question on appeal is whether an equitably adopted child may inherit from the child's natural parent under § 474.010.[2] Appellant correctly claims the trial court erroneously applied the law in holding that the theory of equitable adoption can be used by a third party (Respondent) to bar a child (Appellant) from inheritance rights in her natural parents' property.

Our review of this action for equitable relief is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32.

■ In this case no one disputes that Appellant is the natural child of James Gardner, deceased. The controversy only centers on Appellant's right to inherit from her father under § 474.010 after she was equitably adopted by the Chapmans. Because Appellant apparently "inherited" an interest in Oklahoma real estate from Mrs. Chapman, Respondent claims Appellant "now wants a second bite of the apple—to receive from the estate of the Chapmans, her adoptive parents, and again from the estate of James Gardner, her natural parent." However, Respondent cites no authority supporting her "second bite" theory.

We need not recite the facts the trial court found to support its determination that the Chapmans equitably adopted Appellant. We can resolve the issue on this appeal by assuming, without deciding, the trial court's determination was correct.

This is a case of first impression in Missouri. The parties cite no cases, and we have located none in which a person in Respondent's position has been allowed to establish an equitable adoption to deny an equitable adoptee's inheritance rights from a natural parent. To reach the correct result, we must examine the theory behind equitable adoption.

A sound discussion of the doctrine of equitable adoption is found in 2 Am.Jur.2d *Adoption* § 53 (1994).

Generally speaking, the theory of recovery in an equitable adoption case is founded upon either equitable principles or upon the theory of estoppel. In the former it is a judicial remedy for an unperformed contract of legal adoption or, in the alternative, the ordering of specific performance of an implied contract to adopt. The es-

1. Respondent's petition also named as defendants William O. Broyles, Appellant's husband, Deward E. Hancock, Sr. and Ruth C. Hancock. The Hancocks are grantees in a deed which conveyed Appellant's interest in real estate she "inherited" from her natural father, James Gard-

ner. The Hancocks and Mr. Broyles are also Appellants. For convenience we refer only to Mrs. Broyles as Appellant.

2. Statutory references are to RSMo 1994.

toppel theory operates to preclude a party from asserting the invalidity of a status of an "adopted" child for inheritance purposes. It has been said that a so-called "equitable adoption" is no more than a legal fiction permitting specific performance of a contract to adopt. Furthermore, the descriptive phrase "adoption by estoppel" has been described as a shorthand method of saying that because of the promises, acts and conduct of an intestate deceased, those claiming under and through him are estopped to assert that a child was not legally adopted or did not occupy the status of an adopted child.

An adoption by estoppel is an equitable remedy to protect the interests of a person who was supposed to have been adopted as a child but whose adoptive parents failed to undertake the legal steps necessary to formally accomplish the adoption; the doctrine is applied in an intestate estate to give effect to the intent of the decedent to adopt and provide for the child.

The doctrine is predicated on principles of contract law and equitable enforcement of the agreement to adopt for the purpose of securing the benefits of adoption that would otherwise flow from the adoptive parent under the laws of intestacy had the agreement to adopt been carried out; as such it is essentially a matter of equitable relief. Being only an equitable remedy to enforce a contract right, it is not intended or applied to create the legal relationship of parent and child, with all the legal consequences of such relationship, nor is it meant to create a legal adoption. (Footnotes omitted.)

Our courts embrace the general principles set forth above. *See Halterman v. Halterman,* 867 S.W.2d 559 (Mo.App.1993) (alleged adoptive mother not allowed to intervene in wrongful death action for death of alleged adoptive daughter because doctrine of equitable adoption solely for benefit of child); *Holt v. Burlington Northern R.R.,* 685 S.W.2d 851 (Mo.App.1984) (equitably adopted child entitled to sue for the wrongful death of his adoptive parent within meaning of

§ 537.080(1), RSMo 1978)); *Goldberg v. Robertson,* 615 S.W.2d 59 (Mo. banc 1981) (equitably adopted child not a "legally adopted" child for purposes of § 145.060.1(1) (Missouri inheritance tax statute repealed 1980)); *Rumans v. Lighthizer,* 363 Mo. 125, 249 S.W.2d 397 (1952) (equitable adoption could not be utilized to establish heirship for purpose of inheriting from alleged equitably adopted child).[3]

A case factually similar to the instant matter is *Kupec v. Cooper,* 593 So.2d 1176 (Fla. Dist.Ct.App.1992), where an alleged adopted child sought to inherit from his natural father's estate. The appellate court determined the trial court incorrectly found the child was legally adopted by his stepfather, thereby barring inheritance from the child's natural father. On appeal the child also advanced an argument that the trial court erroneously applied the theory of equitable adoption to change his status to that of a legally adopted child which precluded inheritance from his natural father. Although apparently dicta, the court responded by stating:

> [Equitable adoption] is applied in an intestate estate to give effect to the intent of the decedent to adopt and provide for the child. If no legal adoption occurred and [stepfather] were to die intestate, [child] could use the theory of equitable adoption to inherit a share of his estate. However, application of this doctrine does not change his status to that of a legally adopted child. Equitable adoption could only affect his rights against the intestate estate of [stepfather]. It does not affect his rights against the intestate estate of his natural father. . . .

*Id.* at 1178 (citation omitted).

The Florida court had no difficulty announcing that an equitably adopted child could inherit from both the adoptive parents and from the natural parents because the doctrine of equitable adoption does not change the child's status to that of a legally adopted person. We see no reason for a different result in Missouri.

---

**3.** For a collection of other Missouri cases on this subject see George A. Locke, Annotation, *Modern* *Status of Law as to Equitable Adoption or Adoption by Estoppel,* 97 ALR3d 347 (1980).

Although not factually like the instant case, *Halterman* contains a similar issue to that raised here. The natural father in *Halterman* claimed the alleged adoptive mother was not entitled to establish that she was the deceased child's mother through equitable adoption because the doctrine is solely for the benefit of the child. Here, for the same reason, Appellant claims that Respondent cannot rely on the doctrine to deny Appellant's inheritance rights.

After the natural father in *Halterman* filed a wrongful death action for the death of his daughter, the alleged adoptive mother filed a motion to intervene on the basis that she was the child's mother by an equitable adoption. Relying on *Drake v. Drake*, 328 Mo. 966, 43 S.W.2d 556 (banc 1931), the appellate court upheld denial of the motion to intervene and said, "It is clear from *Drake* that equitable adoption was developed solely to benefit the child." 867 S.W.2d at 560. According to *Halterman* the primary purpose of equitable adoption is illustrated by *Rumans v. Lighthizer, supra,* which held that equitable adoption could not be used to establish heirship for the purpose of inheriting from the alleged equitably adopted child. *Id.*

The result in *Halterman* reinforces our view that the doctrine of equitable adoption does not bar Appellant's inheritance rights in her natural father's estate. Application of the doctrine in this case benefits only Respondent which is contrary to the purpose of the doctrine as reasoned in *Halterman.*

■ Therefore, we hold that the doctrine of equitable adoption does not apply in this case to bar Appellant's inheritance rights in her natural father's estate. If we held otherwise, the primary purpose of the doctrine would be ignored.

The judgment is reversed, and the cause is remanded for further proceedings.

GARRISON and BARNEY, JJ., concur.