BARBARA ANN NEWTON LANKFORD v. THOMAS H. WRIGHT AND THELMA IRENE
WHITE, ADMINISTRATORS OF THE ESTATE OF LULA NEWTON; THOMAS H. WRIGHT,
INDIVIDUALLY; THELMA IRENE WHITE, INDIVIDUALLY; WILLIAM PAUL WRIGHT;
JAY CORNELIUS KNIGHT, JR.; JAMES ROBERT COFFEY; AND PATRICIA
COFFEY NORTHERN COATES

No. 308PA96

(Filed 5 September 1997)

1. **Adoption or Placement for Adoption § 1 (NCI4th)— equitable adoption—recognition in North Carolina**

    The doctrine of equitable adoption should be recognized in North Carolina.

    **Am Jur 2d, Adoption §§ 7, 121.**

    **Modern status of law as to equitable adoption or adoption by estoppel. 97 ALR3d 347.**

2. **Adoption or Placement for Adoption § 1 (NCI4th)— equitable adoption—inheritance rights**

    The doctrine of equitable adoption is not intended to replace statutory requirements or to create the parent-child relationship; it simply recognizes the foster child's right to inherit from the person or persons who contracted to adopt the child and who honored that contract in all respects except through formal statutory procedures.

    **Am Jur 2d, Adoption §§ 7, 121.**

    **Modern status of law as to equitable adoption or adoption by estoppel. 97 ALR3d 347.**

3. **Adoption or Placement for Adoption § 1 (NCI4th)— elements of equitable adoption**

    The elements necessary to establish the existence of an equitable adoption are: (1) an express or implied agreement to adopt the child; (2) reliance on that agreement; (3) performance by the natural parents of the child in giving up custody; (4) performance by the child in living in the home of the foster parents and acting as their child; (5) partial performance by the foster parents in taking the child into their home and treating the child as their own; and (6) the intestacy of the foster parents.

    **Am Jur 2d, Adoption §§ 7, 121.**

LANKFORD v. WRIGHT

[347 N.C. 115 (1997)]

**Modern status of law as to equitable adoption or adoption by estoppel. 97 ALR3d 347.**

**4. Adoption or Placement for Adoption § 1 (NCI4th)— equitable adoption—sufficiency of evidence**

The doctrine of equitable adoption applied so as to give plaintiff a right of inheritance from her foster mother where clear, cogent, and convincing evidence in the record tended to show that plaintiff's foster parents agreed to adopt plaintiff; the foster parents and plaintiff relied on that agreement; plaintiff's natural mother gave up custody of plaintiff to the foster parents; plaintiff lived in the foster parents' home, cared for them in their old age, and otherwise acted as their child; the foster parents treated plaintiff as their child by taking her into their home, giving her their last name, and raising her as their child; and the foster mother died intestate several years after the foster father died.

**Am Jur 2d, Adoption §§ 7, 121.**

**Modern status of law as to equitable adoption or adoption by estoppel. 97 ALR3d 347.**

Chief Justice MITCHELL dissenting.

Justice PARKER joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 122 N.C. App. 746, 472 S.E.2d 31 (1996), affirming an order granting defendants' motion for summary judgment entered by Downs, J., on 12 September 1995 in Superior Court, Watauga County. Heard in the Supreme Court 17 March 1997.

*Baucom, Claytor, Benton, Morgan, Wood & White, P.A., by James F. Wood, III; and Charles M. Welling for plaintiff-appellant.*

*Di Santi Watson, by Anthony S. di Santi, for defendant-appellees.*

FRYE, Justice.

[1] The sole issue in this case is whether North Carolina recognizes the doctrine of equitable adoption. We hold that the doctrine should

**LANKFORD v. WRIGHT**

[347 N.C. 115 (1997)]

be recognized in this state, and therefore, we reverse the decision of the Court of Appeals.

Plaintiff, Barbara Ann Newton Lankford, was born to Mary M. Winebarger on 15 January 1944. When plaintiff was a child, her natural mother entered into an agreement with her neighbors, Clarence and Lula Newton, whereby the Newtons agreed to adopt and raise plaintiff as their child. Shortly thereafter, plaintiff moved into the Newton residence and became known as Barbara Ann Newton, the only child of Clarence and Lula Newton.

The Newtons held plaintiff out to the public as their own child, and plaintiff was at all times known as Barbara Ann Newton. Plaintiff's school records referred to plaintiff as Barbara Ann Newton and indicated that Clarence and Lula Newton were her parents. Plaintiff's high-school diploma also referred to plaintiff as Barbara Ann Newton. After Clarence Newton died in 1960, the newspaper obituary listed Barbara Ann Newton as his surviving daughter. Later, with Lula Newton's assistance, plaintiff obtained a Social Security card issued to her under the name of Barbara Ann Newton.

After plaintiff joined the Navy, plaintiff and Lula Newton frequently wrote letters to each other. In most of the letters, plaintiff referred to Lula Newton as her mother and Lula Newton referred to plaintiff as her daughter. Lula Newton also established several bank accounts with plaintiff, where Lula Newton deposited money plaintiff sent to her while plaintiff was in the Navy. On several occasions, plaintiff took leaves of absence from work to care for Lula Newton during her illness.

In 1975, Lula Newton prepared a will. When she died in 1994, the will was not accepted for probate because some unknown person had defaced a portion of the will. The will named plaintiff as co-executrix of the estate and made specific bequests to plaintiff. Since the will could not be probated, Lula Newton died intestate.

After Lula Newton's death, plaintiff filed for declaratory judgment seeking a declaration of her rights and status as an heir of the estate of Lula Newton. Defendants, the administrators and named heirs of Lula Newton, filed a motion for summary judgment. The trial court granted defendants' motion. The North Carolina Court of Appeals affirmed the order granting summary judgment, reasoning that plaintiff was not adopted according to N.C.G.S. §§ 48-1 to -38 and that North Carolina does not recognize the doctrine of equitable

adoption. This Court granted plaintiff's petition for discretionary review, and we now conclude that the doctrine of equitable adoption should be recognized in North Carolina.

"It is a fundamental premise of equitable relief that equity regards as done that which in fairness and good conscience ought to be done." *Thompson v. Soles*, 299 N.C. 484, 489, 263 S.E.2d 599, 603 (1980). "Equity regards substance, not form," *In re Will of Pendergrass*, 251 N.C. 737, 743, 112 S.E.2d 562, 566 (1960), and "will not allow technicalities of procedure to defeat that which is eminently right and just," *id.* at 746, 112 S.E.2d at 568. These principles form the essence of the doctrine of equitable adoption, and it is the duty of this Court to protect and promote them.

Equitable adoption is a remedy to "protect the interest of a person who was supposed to have been adopted as a child but whose adoptive parents failed to undertake the legal steps necessary to formally accomplish the adoption." *Gardner v. Hancock*, 924 S.W.2d 857, 858 (Mo. Ct. App. 1996). The doctrine is applied in an intestate estate to "give effect to the intent of the decedent to adopt and provide for the child." *Id.* It is predicated upon

> principles of contract law and equitable enforcement of the agreement to adopt for the purpose of securing the benefits of adoption that would otherwise flow from the adoptive parent under the laws of intestacy had the agreement to adopt been carried out; as such it is essentially a matter of equitable relief. Being only an equitable remedy to enforce a contract right, it is not intended or applied to create the legal relationship of parent and child, with all the legal consequences of such a relationship, nor is it meant to create a legal adoption.

2 Am. Jur. 2d *Adoption* § 53 (1994) (footnotes omitted).

[2] Adoption did not exist at common law and is of purely statutory origin. *Wilson v. Anderson*, 232 N.C. 212, 215, 59 S.E.2d 836, 839 (1950). Equitable adoption, however, does not confer the incidents of formal statutory adoption; rather, it merely confers rights of inheritance upon the foster child in the event of intestacy of the foster parents.[1] In essence, the doctrine invokes the principle that equity regards that as done which ought to be done. The doctrine is not

---

1. As used here, the term "foster" means "giving or receiving parental care though not kin by blood or related legally." *Random House Webster's College Dictionary* 525 (1991).

intended to replace statutory requirements or to create the parent-child relationship; it simply recognizes the foster child's right to inherit from the person or persons who contracted to adopt the child and who honored that contract in all respects except through formal statutory procedures. As an equitable matter, where the child in question has faithfully performed the duties of a natural child to the foster parents, that child is entitled to be placed in the position in which he would have been had he been adopted. Likewise, based on principles of estoppel, those claiming under and through the deceased are estopped to assert that the child was not legally adopted or did not occupy the status of an adopted child.

[3] Further, the scope of the doctrine is limited to facts comparable to those presented here. Thirty-eight jurisdictions have considered equitable adoption; at least twenty-seven have recognized and applied the doctrine. *See, e.g., First Nat'l Bank in Fairmont v. Phillips*, 176 W. Va. 395, 344 S.E.2d 201 (1985). A majority of the jurisdictions recognizing the doctrine have successfully limited its application to claims made by an equitably adopted child against the estate of the foster parent. *Geramifar v. Geramifar*, 113 Md. App. 495, 688 A.2d 475 (1997). By its own terms, equitable adoption applies only in limited circumstances. The elements necessary to establish the existence of an equitable adoption are:

(1) an express or implied agreement to adopt the child,

(2) reliance on that agreement,

(3) performance by the natural parents of the child in giving up custody,

(4) performance by the child in living in the home of the foster parents and acting as their child,

(5) partial performance by the foster parents in taking the child into their home and treating the child as their own, and

(6) the intestacy of the foster parents.

*See* 2 Am. Jur. 2d *Adoption* § 54 (1994). These elements, particularly the requirement of intestacy, limit the circumstances under which the doctrine may be applied. Specifically, the doctrine acts only to recognize the inheritance rights of a child whose foster parents died intestate and failed to perform the formalities of a legal adoption, yet treated the child as their own for all intents and purposes. The doctrine is invoked for the sole benefit of the foster child in determining

LANKFORD v. WRIGHT

[347 N.C. 115 (1997)]

heirship upon the intestate death of the person or persons contracting to adopt. Whether the doctrine applies is a factual question, and each element must be proven by clear, cogent, and convincing evidence. *See, e.g., First Nat'l Bank in Fairmont v. Phillips*, 176 W. Va. 395, 344 S.E.2d 201.

[4] In this case, the evidence in the record tends to show that the above elements can be satisfied by clear, cogent, and convincing evidence. The record demonstrates that the Newtons agreed to adopt plaintiff; that the Newtons and plaintiff relied on that agreement; that plaintiff's natural mother gave up custody of plaintiff to the Newtons; that plaintiff lived in the Newtons' home, cared for them in their old age, and otherwise acted as their child; that the Newtons treated plaintiff as their child by taking her into their home, giving her their last name, and raising her as their child; and that Mrs. Newton died intestate several years after Mr. Newton died. These facts fit squarely within the parameters of the doctrine of equitable adoption and are indicative of the dilemma the doctrine is intended to remedy.

We note that our decision to recognize the doctrine of equitable adoption is not precluded by prior decisions of this Court as asserted by defendants and decided by the Court of Appeals. In *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 334 S.E.2d 751 (1985), we specifically stated that "[w]e find no occasion to address the question of whether North Carolina recognizes the doctrine of equitable adoption." *Id.* at 479, 334 S.E.2d at 753. Likewise, in *Chambers v. Byers*, 214 N.C. 373, 199 S.E. 398 (1938), our holding was limited to whether the agreement at issue was an enforceable contract to make a will. Thus, neither *Ladd* nor *Chambers* foreclosed the possibility of future recognition of equitable adoption by this Court.

The dissent points out that a minority of jurisdictions have declined to recognize the doctrine of equitable adoption. However, we again note that an overwhelming majority of states that have addressed the question have recognized and applied the doctrine. More importantly, it is the unique role of the courts to fashion equitable remedies to protect and promote the principles of equity such as those at issue in this case. We are convinced that acting in an equitable manner in this case does not interfere with the legislative scheme for adoption, contrary to the assertions of the dissent. Recognition of the doctrine of equitable adoption does not create a legal adoption, and therefore does not impair the statutory procedures for adoption.

**LANKFORD v. WRIGHT**

[347 N.C. 115 (1997)]

In conclusion, a decree of equitable adoption should be granted where justice, equity, and good faith require it. The fairness of applying the doctrine once the prerequisite facts have been established is apparent. Accordingly, we reverse the Court of Appeals' decision which affirmed the trial court's entry of summary judgment for defendants and remand to the trial court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Chief Justice MITCHELL dissenting.

In its opinion, the majority for the first time accepts the doctrine of equitable adoption for North Carolina. As applied by the majority in this case, the doctrine results in neither an adoption nor equity. Therefore, although I am convinced the majority is engaged in an honest but unfortunate attempt to do good in the present case, I must dissent.

"Equity" is that established set of principles under which substantial justice may be attained in particular cases where the prescribed or customary forms of ordinary law seem to be inadequate. 27A Am. Jur. 2d *Equity* § 1 (1994). Equity "is a complex system of established law and is not merely a reflection of the judge's sense of what is appropriate." *Id.* § 2. It arose in response to the restrictive and inflexible rules of the common law, and not as a means of avoiding legislation that courts deemed unwise or inadequate.

For purposes of governing and regulating judicial action, equity courts over the centuries "have formulated certain rules or principles which are described by the term 'maxims.' " *Id.* § 108. It is these maxims which must control the equity jurisdiction of the courts if their judgments are to reflect anything other than the peculiar preferences of the individual judges involved.

> A court of equity has no more right than has a court of law to act on its own notion of what is right in a particular case; it must be guided by the established rules and precedents. Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity. A court of equity is thus bound by any explicit statute or directly applicable rule of law, regardless of its views of the equities.

*Id.* § 109 (footnotes omitted).

**LANKFORD v. WRIGHT**

[347 N.C. 115 (1997)]

One maxim of equity, as the majority explains, is that equity regards as done that which in fairness and good conscience ought to be done. A court's notion of what is good or desirable does not determine what "ought to be done" in applying equity. The maxim of equity upon which the majority relies must yield to other controlling and established rules or maxims. One such maxim is that a court of equity, however benevolent its motives, is "bound by any explicit statute or directly applicable rule of law, regardless of its view of the equities." *Id.* Thus, no equitable remedy may properly be applied to disturb statutorily defined and established rights, such as those rights created by North Carolina statutes controlling intestate succession or those controlling legal adoption.

The North Carolina Intestate Succession Act provides a comprehensive and extensive legislative scheme controlling intestate succession by, through, and from adopted children. N.C.G.S. § 29-17(a) provides:

> A child, *adopted in accordance with Chapter 48 of the General Statutes* or in accordance with the applicable law of any other jurisdiction, and the heirs of such child, are entitled by succession to any property by, through and from his adoptive parents and their heirs the same as if he were the natural legitimate child of the adoptive parents.

N.C.G.S. § 29-17(a) (1995) (emphasis added). The extensive scheme created by the legislature is clear and unambiguous. It provides, in pertinent part, that only those children who are adopted *in compliance with chapter 48* or adopted according to the requirements of another jurisdiction are eligible to take by intestate succession. Therefore, the maxim relied upon by the majority may not properly be applied here.

> Equity will not interfere where a statute applies and dictates requirements for relief. Use of equitable principles to trump an apposite statute thus is legally indefensible. The disregard of an unambiguous law based on sympathy is unjustifiable under the rubric of equity.

27A Am. Jur. 2d *Equity* § 246 (footnotes omitted).

It is well established that "[w]here an extensive legislative scheme governs, it is incumbent upon chancellors to restrain their equity powers." *Id.* The application of the doctrine of equitable adoption by the majority in this case violates this principle of equity

requiring greater restraint when dealing with statutory law than when addressing the common law. The majority's application of the doctrine of equitable adoption here negates the rights of other heirs such as defendants which are expressly provided for in the extensive legislative scheme established by the North Carolina Intestate Succession Act. In the instant case, the application of the doctrine of equitable adoption denies other rightful heirs their statutory intestate shares, in effect voiding the intestate succession hierarchy enacted by our legislature. This result is contrary to established maxims of equity.

Further, contrary to established maxims of equity, the decision of the majority also "trumps" another applicable extensive legislative scheme. Adoption did not exist at common law in North Carolina. Therefore, we have expressly and correctly held that adoption "can be accomplished only in accordance with provisions of statutes enacted by the legislative branch of the State government." *Wilson v. Anderson*, 232 N.C. 212, 215, 59 S.E.2d 836, 839 (1950). The North Carolina General Assembly has enacted a comprehensive and extensive legislative scheme governing adoptions contained in chapter 48 of the General Statutes. Plaintiff does not fall within the requirements of these statutes. Therefore, I believe that the majority errs in failing to apply restraint in the exercise of its equity powers and in applying its own notion of what "ought to be done" in order to improperly "trump" an apposite statute. 27A Am. Jur. 2d *Equity* § 246.

Presently, all states recognize a parent-child relationship through adoption if the certain and unambiguous statutory procedures of each specific state are followed. A strong minority of courts that have reviewed the issue have declined to recognize the doctrine of equitable adoption. *See Wilks v. Langley*, 248 Ark. 227, 235, 451 S.W.2d 209, 213 (1970) (holding inheritance under theory of "virtual adoption" unknown in Arkansas); *Maui Land & Pineapple Co. v. Naiapaakai Heirs of Makeelani*, 69 Haw. 565, 568, 751 P.2d 1020, 1022 (1988) ("to depart from the statutes by creating a doctrine of equitable adoption would import mischief and uncertainty into the law"); *In re Estate of Edwards*, 106 Ill. App. 3d 635, 637, 435 N.E.2d 1379, 1381 (1982) ("Illinois has not expressly recognized the theory of equitable adoption"); *Lindsey v. Wilcox*, 479 N.E.2d 1330, 1333 (Ind. Ct. App. 1985) ("the doctrine of equitable adoption has never been approved in Indiana and it continues to be denied judicial approval"); *In re Estate of Robbins*, 241 Kan. 620, 621, 738 P.2d 458, 460 (1987) ("Kansas courts do not recognize the doctrine of equitable adop-

tion"); *Pierce v. Pierce*, 198 Mont. 255, 259, 645 P.2d 1353, 1356 (1982) (the adoptive parent or parents must follow the required procedures set forth in the Uniform Adoption Act in order for an adoption to occur); *Alley v. Bennett*, 298 S.C. 218, 221, 379 S.E.2d 294, 295 (1989) (the method of adoption provided by statute is exclusive); *Couch v. Couch*, 35 Tenn. App. 464, 476, 248 S.W.2d 327, 333 (1951) ("The right of adoption was unknown to the common law. It is of statutory origin, and to create the contemplated relation the procedure fixed by the statute must be substantially followed.").

Asserting their belief that adoption is singularly defined by statute, these courts have properly deferred to the judgment of their legislators and the procedures established in their state adoption statutes. These courts have also deferred to their legislative bodies to enact laws governing the many complex issues that will arise if the doctrine of equitable adoption is recognized. Such issues would include whether the equitably "adopted" child would inherit from his or her natural parents or from a natural sibling who had not been equitably adopted. Moreover, a court deciding to recognize "equitable adoption" would have to determine for inheritance purposes the relationship between the equitably adopted child's issue and the equitably adoptive parents, versus the child's biological parents. The complexities abound.

The North Carolina General Assembly clearly enacted chapter 48 of the General Statutes of North Carolina with the intent to establish the exclusive procedure by which a minor child may be adopted. The preface to chapter 48 states the legislative intent in adopting this chapter.

The General Assembly finds that it is in the public interest to establish a *clear judicial process* for adoptions, to promote the integrity and finality of adoptions, to encourage prompt, conclusive disposition of adoption proceedings, and to structure services to adopted children, biological parents, and adoptive parents that will provide for the needs and protect the interests of all parties to an adoption, particularly adopted minors.

N.C.G.S. § 48-1-100(a) (1995) (emphasis added). The legislature intended that adoption in North Carolina be accomplished only through the formal judicial proceedings provided for in the extensive legislative scheme created in chapter 48. Therefore, equity may not properly interfere by creating a new form of partial or total adoption.

LANKFORD v. WRIGHT

[347 N.C. 115 (1997)]

In effect, this Court preempts statutes enacted by our legislature in order to recognize the doctrine of equitable adoption. However, because our legislature has extensively, comprehensively, and unambiguously acted, both with regard to adoption and with regard to intestate succession, I am persuaded that the majority improperly "trumps" clear legislative intent in the name of equity.

Despite plaintiff's foster parents' verbal acknowledgments and holding plaintiff out as their natural child, they never legally adopted her by complying with the statutory process. "A mere contract to adopt a child, however, is not a contract to devise or bequeath property to that child." *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 486, 334 S.E.2d 751, 758 (1985). Thus, it is my opinion that this Court should not declare plaintiff to have been "equitably adopted," thereby subrogating the rights of the statutorily determined heirs for purposes of intestate succession.

Finally, another principle of equity prevents the proper application here of the maxim that equity regards as done that which ought to be done. Defendants in this case include the heirs of Lula Newton under the North Carolina Intestate Succession Act. There is no allegation, contention, or evidence that they are anything other than innocent third parties to the transactions between plaintiff and her natural parents on the one hand and the Newtons on the other concerning any promise to adopt. This Court, like most courts, has expressly recognized and held that the maxim that equity regards as done that which ought to be done *ought not* to be and "will not be enforced to the injury of innocent third parties." *Hood ex rel. N.C. Bank & Trust Co. v. N.C. Bank & Trust Co.*, 209 N.C. 367, 381, 184 S.E. 51, 63 (1936); *see Ladd v. Estate of Kellenberger*, 314 N.C. at 487, 334 S.E.2d at 758; *see also Casey v. Cavaroc*, 96 U.S. 467, 24 L. Ed. 779 (1877); *Riganti v. McElhinney*, 248 Cal. App. 2d 116, 56 Cal. Rptr. 195 (1967); *Kennedy v. Bank of America*, 237 Cal. App. 2d 637, 47 Cal. Rptr. 154 (1965); *Rigby v. Liles*, 505 So. 2d 598 (Fla. Dist. Ct. App. 1987); *Bedal v. Johnson*, 37 Idaho 359, 218 P. 641 (1923); *Kelsey v. Kelsey*, 190 N.Y.S. 52 (Sup. Ct. 1921), *rev'd on other grounds*, 204 A.D. 116, 197 N.Y.S. 371 (1922); *Crahane v. Swan*, 212 Or. 143, 318 P.2d 942 (1957); *Smith v. Schwartz*, 398 Pa. 555, 159 A.2d 220 (1960); *Crabb v. Uvalde Paving Co.*, 23 S.W.2d 300 (Tex. 1930). Here, the majority injures such innocent third parties.

The record in the present case does not indicate that either plaintiff or defendants are anything other than innocents. Therefore, gen-

eral principles of equity do not arise concerning what "ought to be done" as between them; "where equities are equal, 'the law must prevail.' " 27A Am. Jur. 2d *Equity* § 139 (footnotes omitted).

In the present case, the controlling maxims of equity clearly require that this Court restrain its equity powers so as not to overrule comprehensive statutory schemes and, thereby, do harm to innocents. For these reasons, I respectfully dissent from the decision of the majority and would affirm the holding of the Court of Appeals which affirmed the order of the trial court.

Justice PARKER joins in this dissenting opinion.